RECEIVED
JUL 12 2004

FILED
2004 JUL 12 P 4:49

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
BRIDGEPORT, CONN

AT BRIDGEPORT

| | |
|---|---|
| HADLEY MACPHERSON (EGAN) | NO. 3:01CV01555 SRU |
| and | |
| RACHEL EGAN | |
| and | JULY 7, 2004 |
| LOYAL EGAN | |
| PLAINTIFFS | |
| VS. | CIVIL ACTION |
| ATTORNEY SALLY HODGDON | |
| and | LETTER TO THE |
| THE COMMUNITIES' LAW CENTER | COURT |
| and | |
| SISTERS OF ST. JOSEPH | |
| and | JURY DEMANDED |

**SISTERS OF MERCY**

and

**SISTER OF NOTRE DAME**

and

**DAUGHTERS OF THE HOLY SPIRIT**

DEFENDANTS

# **LETTER TO THE COURT**

To the Honorable Judge Underhill,

On June 2, 2004, the plaintiffs, Hadley Macpherson, Rachel Egan, and Loyal Egan, filed a Motion for Stay of Process and Stay of Responses. Earlier that same day, unbeknownst to the plaintiffs, the defendants in both this case #3:01CV01555 and case # 3:02CV1309 had already filed their Responses with the Court. The plaintiffs learned this when they checked on Pacer and saw that the defendant's Motions in both cases had come in before theirs. At that point, the plaintiffs believed that their Motion for Stay of Process and Stay of Responses was now moot, as they did not realize that their Motion for Stay could still be considered when the defendants had already responded.

As a result, the plaintiffs believed that the due dates were then the same as they had been before they ever filed their Motion for Stay of Responses and Stay of Process. The plaintiffs thought they had to wait to see Attorney Wade's response on July 1, 2004, in the case of #3:02CV1309, and that they themselves had until June 23, 2004, to respond to Attorney Sheehy's Motion to Strike, in the this case # 3:01CV01555.

The plaintiffs did not realize that the Motion to Stay Process and Responses was still, in reality, on the table, after June 2, 2004.

On Friday, June 11, 2004, the plaintiffs saw the Dystonia specialist at Children's Hospital, who is evaluating and treating both children.

The appointment, and the information that the plaintiff received as to the genetic basis of the disease, the prognosis, and the peripheral issues involved, was devastating. The plaintiff was

unable to work given the news. Besides her own personal grief, the plaintiff had to phone her relatives and siblings, and transmit what she had hoped she would never have to.

At that time, it was however, verified to the plaintiffs, that a warmer climate would work to the benefit of the childrens' health, and possibly reduce some of the discomfort of the Dystonia.

The plaintiffs, in anticipation of the news, had already sent the child plaintiff, Loyal Egan's application in to a very fine private school located in Charlotte North Carolina, where he was immediately accepted. The plaintiffs were only waiting for the doctors go ahead before making the final decision.

After the news on June 11, 2004, the plaintiffs went down to North Carolina in search of possible housing, and so that the plaintiff, Loyal Egan could also look at his school and meet with administration.

The plaintiffs, thinking they knew where all the deadlines were, and what was expected of them, did not check back to their roommate in Pennsylvania during the time they were in North Carolina. The plaintiffs do not have cell phone, and in fact, do not have their own answering machine, as they have been living only temporarily with a friend for the remainder of the school year.

The voicemail on which people leave messages for the plaintiffs, does not belong to the plaintiffs, but is a business line of the roommate who lives at the house, and which voicemail the plaintiffs do not have a password to, or access to from afar.

When the plaintiffs went down to North Carolina they were not sure of where they were going to stay, so they did not leave a number they could be reached at, particularly since they thought everything was on hold and already deadlined. The plaintiffs do not have a laptop, so

they took no computer with them, and did not have e-mail..

Some time in the following week, while the plaintiffs were in North Carolina, the Court granted the plaintiffs Motion for Stay of Process and Stay of Responses. Soon after that, the Court phoned the plaintiffs' phone number, known as 215 - 325 - 1001, which is the business line of the roommate, referred to earlier.

When the Court called the number, the clerk left the deadline dates of June 23, 2004 for the plaintiffs to have their Amended Complaint in for the case of #3:01CV01555, and June 27, 2004, for the case of #3:02CV1309, on the voicemail.

The plaintiffs arrived back late on June 21, 2004, and did not hear the contents of that voicemail message until the morning of June 22, 2003.

When the plaintiffs had originally filed their Motion for Stay of Process and Stay of Responses, they had planned to file a Consolidated Amended Complaint, due to the information that led them to make the Motion for Stay of Process and Stay of Responses in the first place, that being that the defendants in the two cases had acted in concert.. The two different days being chosen as deadlines was not anticipated therefore when the plaintiffs had made their Motion for Stay of Process and Stay of Responses, as that would require the cases being alleged separately, and partially defeat the plaintiffs' ability to aver properly against the defendants as co-conspirators.

As a result, on June 23, 2004, the plaintiffs filed a Motion for Consolidation to allow them to bring in their Amended Complaint in Consolidated form, which they believe to be in the best interest of all defendants, all attorneys, the Court, and any jury, should one be needed if the cases go to Trial.

In their Motion for Consolidation, the plaintiffs stated that they would have their

Amended Consolidated Complaint in by July 28, 2004, since the deadline of July 27, 2004, was a Sunday.

However, in the immediate days that followed from Thursday July 24, 2004, through the weekend, the plaintiff, Hadley Macpherson became sick with a fever, nausea, and visual discomfort and irritation. The plaintiff believed she just had the flu again, and thought the eye discomfort was from the sickness itself, allergens, eyestrain from the computer screen, or her contact lenses. The plaintiff missed the Monday July 28, 2004 deadline due to that physical condition.

However, the plaintiffs then saw on Pacer that a date had been set by which the opposing counsel were to make their Motions in Response to the plaintiffs Motion for Consolidation, which then led the plaintiffs to wonder whether they were even permitted to file their Consolidated Amended Complaint until the defendants had had a chance to respond to her Motion for Consolidation first.

At the same time, the plaintiff, Hadley Macpherson's symptom's worsened so that on Thursday July 1, 2004, the plaintiff went to the doctor. The doctor assumed the plaintiffs symptoms were a flu also.

On Saturday morning, still feeling ill, and suffering from more eye discomfort and lack of visual acuity, the plaintiff, Hadley Macpherson, went to the Optometrists to pick up a new pair of contacts, in hopes that the eye pain could at least be abated so she could finish the documents. The left eye had begun to look a little red.

When the optometrist looked into the plaintiffs left eye with the instruments to check to see the reason for the discomfort, blurriness, tearing, and light sensitivity, the optometrist told the plaintiff that she needed to immediately go to the hospital because she would go blind if she

did otherwise  The plaintiff had a bacterial infection and corneal ulcer sitting just below the center of the pupil, which would lead to blindness in two days, if not stopped.

The plaintiff, Hadley Macpherson since that day of Saturday, July 3, 2004, has been unable to work at the filings or documents at all.  The eye itself is swollen due to edema, which causes both pain, blurred vision, and photophobia, which is extreme sensitivity to light.  The iris is inflamed, and the cornea is infected with a bacterial infection which was the source of the nausea, the fever, and the eye pain the earlier week.

The plaintiff is being treated by a top ophthamologist, in the area, one Dr. Kristina Longshore, whose medical letter explaining the condition in greater detail is attached to this Letter to the Court, as an Exhibit.

The plaintiff, Hadley Macpherson, has waived privilege to the Court to speak to Dr. Longshore, if the Court needs to verify the information in her medical letter.

The plaintiff, Hadley Macpherson, needs at least two weeks more of treatment before she can work again without impairment at the computer screen, read, or drive.  The photophobia inherent in both the Corneal Ulcer condition and the Iritis condition, and the eye strain associated with looking at a computer screen, as well as the blurred vision are all prohibitive of the plaintiff accomplishing any real visual activity.  And the Iritis itself cannot yet be treated at this time, because the steroid needed to cure that condition would interfere with the antibiotic currently being used to treat the bacterial infection of the corneal ulcer.

The plaintiff does not want to in any way risk the loss of her left eye by trying to force herself to visually perform with it before it is healed, as it is her only working eye, and without it she would be permanently disabled, and unable to drive, read, or walk without a cane for the remainder of her life.

Therefore, the plaintiffs are requesting an extension of time by which to allow the plaintiffs to bring their documents in.

Though the plaintiff, Rachel Egan, a nineteen year old, is capable of being dictated to, she does not in any way have the understanding of the law, the knowledge of the case in detail, or the understanding of the legal information needed to be contained in the documents, in order to complete the documents herself.

For the plaintiff, Hadley Macpherson to dictate that level of specificity and detail to the plaintiff, Rachel Egan, would not only be a slow, painstaking, and almost impossible process, but a process which would most likely result in serious errors.

Wherefore, the plaintiffs, Hadley Macpherson, Rachel Egan, and Loyal Egan, respectfully request an extension of time of by which to bring their documents in. The plaintiff, Hadley Macpherson does not know if she will be able to complete the documents in ten days, or whether she will need three weeks to complete them. She only knows that she cannot see or look at anything at this moment in time, without pain and blurred vision.

Therefore, unable to ascertain an exact date to request, the plaintiffs ask for whatever amount of time that the Court feels is appropriate under the circumstances.

Respectfully Submitted,

_____
Rachel Egan, plaintiff

_____
Loyal Egan, plaintiff

_____
Hadley Macpherson, plaintiff

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed this day July 7, 2004 to Attorney Edward Sheehy, of Williams, Cooney, and Sheehy, 799 Silver Lane, Trumbull, CT. 06611 - 0753.

Plaintiff Pro Se

Hadley Macpherson

P.O. Box 501

Lahaska, PA 18931

(215) 325 - 1001

Rachel Egan, Plaintiff

Loyal Egan, Plaintiff