# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

FILED

2004 SEP 27  A 10: 28

U.S. DISTRICT COURT

## AT BRIDGEPORT

**HADLEY MACPHERSON (EGAN)**                    NO.  3:01CV01555 SRU

and

**RACHEL EGAN**

and                                            SEPTEMBER 23, 2004

**LOYAL EGAN**

PLAINTIFFS

                                               CIVIL ACTION

VS.

**ATTORNEY SALLY HODGDON**                     **REPLY TO**

and                                            **DEFENDANTS'**

**THE COMMUNITIES' LAW CENTER**                **OBJECTION TO**

and                                            **PLAINTIFFS LETTER**

**SISTERS OF ST. JOSEPH**

and

**SISTERS OF MERCY**

and

**SISTER OF NOTRE DAME**

and

**DAUGHTERS OF THE HOLY SPIRIT**

DEFENDANTS

# REPLY TO DEFENDANT'S OBJECTION TO THE

# PLAINTIFFS' LETTER TO THE COURT

In  response to the defendants' motion entitled "Objection to the Plaintiffs Letter to the Court", the plaintiffs submit the following Reply.

The defendants attempt to object to the plaintiffs Letter to the Court, requesting an extension of time by which to file their Amended Complaint under the circumstances, by complaining of the number of extensions granted to the plaintiffs in the past, and using those extensions previously granted to cumulatively  prejudice and defeat the plaintiffs attempt to Consolidate the cases now.

The plaintiffs contend that the number of extensions granted has nothing to do with the issue of the legitimacy of the plaintiffs' request submit an Amended Complaint.

Further, the plaintiffs contend that the facts enumerated below prove that the defendants, through their own actions, waived their opportunity or right to complain of those extensions, or use those extensions against the plaintiffs in any cumulative fashion.

On April 14, 2003, the plaintiffs filed a Motion for Extension of Time in both this case of # 3:02cv1309 and the case of # 3:01cv01555 due to sudden news that the plaintiff, Loyal Egan, then 13 years old was, suffering from serious physical illness.

The plaintiff, Hadley Macpherson, as a pro se and single mother, in the face of that news, was unable to litigate.

That same week, the plaintiffs also received news that the defendant, Paul Egan, in this case of #3:02cv1309, had gone into the Superior Court at Hartford, on April 2,

2003, <u>without Notice or Service</u> to the plaintiffs, Hadley Macpherson, requesting premature Termination of the Child Support of the child plaintiff, Rachel Egan.

At that Hearing on April 2, 2003, in Superior Court, the judge who sat the Hearing, Judge Antonia Robaina, never asked where the plaintiff was, never asked why she was not present, and never asked whether she had been served. Judge Antonio Robaina never mentioned her at all.

Judge Antonio Robaina went forward with the Hearing deliberately ex parte.

During that Hearing in Superior Court on April 2, 2003, the defendant, Paul Egan, appeared without his attorney present, that being the defendant, Attorney John Berman in this case of # 3:02cv1309, but argued on his and Attorney John Berman's behalf, as well as on the behalf of the defendant Attorney Sally Hodgdon in the case of # 3:01cv01555, and was allowed to complain without restraint of the events in these two Federal cases which are at issue here now.

Judge Antonio Robaina listened to those complaints, and then at the defendant Paul Egan's request, read a handful of unknown letters and papers offered to it by the defendant, Paul Egan, without ever marking them as exhibits or entering them into the file as evidence.

After reading the unidentified and unknown documents, Judge Antonio Robaina handed the papers and letters back to Paul Egan, and immediately granted him the premature Termination of Child Support of the child plaintiff in this case, Rachel Egan.

Judge Antonio Robaina then went on to also offer to immediately modify the Child Support of Loyal Egan, though no Motion for Modification had been filed, though sua sponte Modification is illegal, and though the plaintiff, Hadley Macpherson could

have no knowledge of the Modification as again she was not Noticed or Served, and was therefore not present to protect her own, or the child plaintiff, Loyal Egan's interests.

Judge Antonio Robaina, then, without any knowledge of the defendant, Paul Egan's income, and without making any inquiry as to the income of the defendant, Paul Egan, allowed the defendant, Paul Egan, to choose a figure out of thin air, that he thought he should pay for his remaining child, the child plaintiff in this case, Loyal Egan.

Judge Antonio Robaina then immediately granted that figure on the basis of no documentary or oral evidence that it was in any way the appropriate amount of Child Support entitled to the child plaintiff, Loyal Egan, under the law.

When the plaintiff, Hadley Macpherson, learned of the Hearing, and received the transcript that clearly evidenced that Judge Antonio Robaina had deliberately and consciously violated 22 state laws, and 13 Connecticut court rules, the plaintiff knew that she would in no way receive a fair re-hearing if she appeared before him on a Motion to Reopen or a Motion to Reconsider, and that in fact she and the two child plaintiffs in this case would be in danger of losing more of their substantive rights if she were to appear before that same judge, given his previous deliberately unethical behavior.

Therefore, the plaintiff, on April 30, 2003, filed an Appeal of the two Orders issues on April 2, 2003, that being the premature illegal Termination of Child Support for Rachel Egan, and the illegal sua sponte Modification of Child Support for Loyal Egan.

As a result of filing that Appeal, the plaintiffs requested an Extension of time in this present case of # 3:01cv01555, and in the case of # 3:02v1309 as the defendants in this case used another Court to harm the plaintiffs, and to cause the plaintiffs, already dealing with the sudden illness of the child plaintiff, Loyal Egan, to be suddenly be

thrown into an immediate unexpected financial crisis, one which would cause them to be unable to pay their rent, and force the plaintiff to now have to write an Appellate Brief in order to undo the illegal Orders issued on April 2, 2003.

During the nine months that followed, the plaintiffs continued to file numerous extensions in both this case # 3:01cv01555 and case #3:02cv1309, due to the continuing seriousness of the plaintiff, Loyal Egan's physical condition, the news of which was increasing in a negative way, and the responsibility and necessity of the plaintiff, Hadley Macpherson's completion of the Appellate Brief in the appellate case known as AC24175

The Court granted all of those Motions for Extensions of Time, without opposition from the defendants in either of the two cases known as # 3:02cv1309 and # 3:01cv01555, and without prejudice to the plaintiffs..

The attorney for the defendant, Attorney Sally Hodgdon, in this case # 3:01cv01555, Attorney Edward Sheehy, never objected to, or opposed, any of the plaintiffs Motions for Extension of Time, given the legitimate circumstances under which they were requested.

The attorney for the defendants in the case of # 3:02cv1309, Attorney Kevin Majewski, never objected to, or opposed, any of the plaintiffs' Motions for Extensions of Time, given the legitimate circumstances under which they were requested.

In stating no objections to those Motions for Extensions of Time, and filing no Motions in Opposition to the plaintiffs requests for extension of time, the defendants in both of the two cases agreed to the granting of those extensions of time, and therefore agreed that the basis on which they were requested was valid and worthy of the extra time that the plaintiffs were ultimately granted.

Had they <u>not</u> agreed with the basis on which those extensions were asked for, <u>they would have objected to them</u> out of their duty to their clients to pursue their case with due diligence.

In so agreeing to those extensions, the defendants in both cases <u>permanently lost or waived,</u> <u>all right to oppose, or complain of, the granting of those extensions, or the basis on which they were granted, in the future.</u>

On April 13, 2004, a telephone conference call was held with the plaintiff, Hadley Macpherson, Attorney Edward Sheehy for the defendant, Attorney Sally Hodgdon, in this case of # 3:02cv01555, before the Honorable Judge Stephan Underhill.

The Court, during that conference call on April 13, 2004, discussed the status of the case, and granted the plaintiffs the legal right to file their Amended Complaint on May 14, 2004.

During that conference call on April 13, 2004, Attorney Edward Sheehy made no objection to the Order, or Extension of Time, that was granted to the plaintiffs on that date.

In stating no objection to the Courts granting of May 14, 2004, as a date by which the plaintiffs could file their Amended Complaint, Attorney Edward Sheehy <u>agreed to that Extension of Time to file the Amended Complaint</u>, and <u>agreed to the basis on which it was granted</u>.

In doing so, the defendant, Attorney Sally Hodgdon<u>, permanently lost all right to complain of, or oppose, the granting of that Order or Extension on April 13, 2004, or the basis on which it was granted.</u>

On April 14, 2004, a telephone conference call was held with all plaintiffs and

defendants represented in the case of # 3:02cv1309, before the Honorable Judge Stefan Underhill.

The Court, during that conference call on April 14, 2004, discussed the status of the case, and granted the plaintiffs the legal right to file their Amended Complaint on May 14, 2004.

In stating no objection to the Courts granting of May 14, 2004, as a date by which the plaintiffs could file their Amended Complaint, Attorney David Samuels agreed to that Extension of Time, and agreed that the basis on which it was requested was valid and worthy of the extra time that the plaintiffs were ultimately granted.

Had they not agreed with the basis on which that extension was asked for, and granted, they would have objected to them out of their duty to their clients to pursue their case with of due diligence.

In so agreeing to that extension of time, the defendants in that case permanently lost, or waived, all right to oppose, or complain of the granting of that extension of time, on April 14, 2004, or the basis on which it was granted, in the future..

Attorney Edward Sheehy. in his Objection to the Plaintiffs Letter, complains of the numerous extensions of time previously requested and granted to the plaintiffs, and attempts to use those requests for extensions of time to now defeat the plaintiffs filing of an Amended Complaint.

However, Attorney Edward Sheehy's argument as to the number of extensions previously granted by the Court is legally moot, as he never opposed any of the plaintiffs' Motions for Extensions in the past, and in not opposing those request for extension, agreed with those extensions back when they were granted.

As a result, Attorney Edward Sheehy <u>cannot now use those extensions of time previously granted to the plaintiffs, and granted without prejudice to the plaintiffs,</u> to <u>cumulatively prejudice the plaintiffs' attempt to file a consolidated Amended Complaint</u> now, when <u>each individual request for extension of time,</u> was never opposed, and never complained of, <u>back when it was asked for</u> and granted.

An Extension of Time allows grace to a party to file a pleading with no prejudice attached that filing, and no prejudice attached to the party's case who sought the extension..

Therefore, if no prejudice was attached at the time of the granting of the Extensions in the past, then the defendants cannot now use those Extensions of Time as a weapon against the plaintiffs when they were granted that time graciously by the Court, without prejudice, and without opposition or complaint from anyone.

Finally, when acts of Fraudulent Non-disclosure and Fraudulent Concealment are committed by defendants in order to prevent plaintiffs from ever knowing the true and full basis of their cause of action, <u>plaintiffs have a legal right to re-file an Amended Complaint so as to include all tortuous acts now known of, against all defendants now known of,</u> with the statute of limitations now tolling from the date of the discovery of the information that was fraudulently non-disclosed and fraudulently concealed, else the defendants reap reward for their Fraud.

The number of previous Extensions granted is moot upon discovery of a Fraud, particularly if the Fraud was designed and perpetuated by the defendants to keep the plaintiffs in the dark, and cause them, with or without extensions, to be wasting what little time, energy, and funds they had.

The defendants in this case further attempt to use the fact that the plaintiffs have not filed their Amended Complaint within the time frame granted to them, to defeat and prejudice the plaintiffs ability to file an Amended Complaint.

However, when acts of Fraudulent Non-disclosure and Fraudulent Concealment are committed by defendants in order to prevent plaintiffs from ever knowing the true and full basis of their cause of action, plaintiffs have a legal right to re-file an Amended Complaint so as to include all tortious acts now known of, against all defendants now known of, <u>with the statute of limitations now tolling from the date of the discovery of the information that was fraudulently non-disclosed and fraudulently concealed,</u> else the defendants reap reward for their Fraud.

The plaintiffs are therefore entitled to re-file an Amended Complaint even now, as the statute of limitations has not run out from the date of discovery which was only late this spring of 2004.  To deny them that chance would be to reward the defendants for their efforts to hide from the plaintiffs the true cause of action they were entitled to recover for.

Further, the plaintiffs submit that they had  valid reasons for missing the 10 day date imposed.

All attorneys and defendants in the two cases are fully aware from the Letter to the Court dated July 7, 2004, that the plaintiff Hadley Mapcherson was struck with a sight threatening condition.

The letter from Dr. Kristina Longshore, clearly outlined the nature of the plaintiffs condition, the danger that she could lose her sight completely, the immediacy of treatment, and the prolonged visual incapacitation caused by the bacterial corneal

infection.

The plaintiff, Hadley Macpherson, already had one unusable eye. The one functioning eye now had a corneal ulcer burrowing its way through the center of the eyeball. The eyeball itself was suffering from edema (swelling), which caused extreme blurriness and pain, and iritis (inflammation of the iris), which caused extreme sensitivity to light. The plaintiff was not able to see clearly or keep her eyes open without intense pain.

It is difficult therefore for the plaintiffs to understand how it is that the defendants in this case think the plaintiff, Hadley Macpherson, could have met the 10 day date, under that visual handicap, with no staff, and no other attorney, or funds to immediately hire an attorney, to take over for her.

Even if the plaintiffs had had the funds to hire an attorney, it would have taken them longer than ten days to find one, and much longer still for that attorney to become acquainted with both cases, and acquainted with the seven 3" thick notebooks worth of evidence in order to have been able to draft an accurate Amended Complaint, and in order for that attorney to have been able to sign his or her name to that Amended Complaint without violating Rule 11.

Further, the plaintiffs contend that if the delays in their action in this case of #3:02cv1309 and case # 3:01cv01555 were not just the result of visual incapacitation, but also were the result of legal and financial burdens imposed on them by illegal actions of the defendants, then the plaintiffs should not be prejudiced by that delay

The plaintiffs submit that since the plaintiffs filing of the July 7, 2004 Letter to the Court, the defendants in these two cases have once again used another court to unfairly

cause financial hardship to the plaintiffs, and to unnecessarily burden the plaintiff, Hadley Macpherson, with litigation in both the Superior and Appellate Courts.

It is likely that this Court is unaware of those events, but those events and issues involve all plaintiffs and defendants in these two Federal cases, and have impacted the plaintiffs ability to timely litigate these Federal cases.

The facts surrounding the defendants actions, and the plaintiffs delay, are as follows:

As all parties and attorneys in this case are fully aware, the child plaintiff, Loyal Egan, is suffering from a disease known as Dystonia. Dystonia causes involuntary muscle contractions throughout the entire body that progressively worsen and force the body to twist into permanent contortion.

As part of the Dystonia, Loyal Egan is also suffering from the added conditions of hyper-reflexia, clonus, and ataxia as well, conditions which involve not just the central nervous system in the brain, and all muscle groups throughout the body, but which evidence central nervous disturbance, and disease, in the spinal chord.

All of those conditions cause intense pain to the child plaintiff, Loyal Egan, and render him incapable of performing physical tasks to a normal degree.

The child plaintiff, Loyal Egan, is on a medication called Carbidopa/levo, which he takes three times a day in an attempt to abate the involuntary contractions which occur throughout his body. The arches of his feet, as of this spring, have deformed, and he no longer has the normal stretch or flexibility in his legs or his back. His arms and hands are now weaker than they should be, with his right arm, shoulder and hand significantly weaker than his left.

When the child plaintiff, Loyal Egan, reaches for an object, and a contraction occurs, he cannot lift that object whether it be a notebook or a toothbrush. On one occasion, he woke up one day, and his right hand was frozen in a sideways position, which remained in that incapacitated position for four days, completely unusable, and severely cramped. He has special accommodations at school so that he can type his work in the classroom instead of write, and he has a double set of books so that he does not have to carry all of them home at night.

The child plaintiff, Loyal Egan, is as of yet not on pain killers, as to dope him at this point in his childhood would cause him intellectual and academic losses, and a loss of joy in participating in life and interacting with others, so he withstands the pain instead. He is only 14.

The disease of Dystonia will eventually cripple the child plaintiff, Loyal Egan, before he reaches adulthood, and render all parts of his body unusable except his brain, though he will have difficulty communicating his thoughts, as the Dystonia will also take his ability to move his mouth and speak.

Dystonia is genetic. In all likelihood, the basketball head injury when Loyal was 9, exacerbated the disease already lurking. The child plaintiff, Rachel Egan, suffers from the same disease, but is on a different course, and it appears will suffer a slower progression which though causing her dysfunction to worsen with age, will not debilitate her completely. Neither she nor her brother will ever have children.

The above prognosis is without the added burden of the secondary central nervous system diseases which often accompany the disease of Dystonia, and the existence of which, if proved over the next six months to a year, will also eventually take the child

plaintiff, Loyal Egan's mind, and then his life.

The plaintiff, Hadley Macpherson, on June 11, 2004, was informed that a warmer climate would bring some relief to the child plaintiff, Loyal Egan's suffering.  The plaintiffs, as a result of that information, immediately went down to North Carolina to look for a school for the child plaintiff, Loyal Egan, and to see about housing for an impending move, so that the child plaintiff, Loyal Egan, could be moved down there by the start of high school in September.

The plaintiff anticipated the funds to pay for the move to come from the money given back to her from the Appeal known as AC24175, an Appeal this Court is aware of, as the plaintiff filed for extensions to finish that Appellate Brief one year ago.

The plaintiff argued at the Appellate Court on March 25, 2004, and had every reason, in June, to believe that she would win her Appeal which was based on Due Process claims.

On June 23, 2004, the Appellate Court released its advance opinion on the appellate case of AC24175.  (The opinion was formally printed on June 29, 2004.)

The Appellate Court ruled in favor of the plaintiff, Hadley Macpherson.

The Appellate Court, in its opinion, stated the following:

> "Because the April 2, 2003 Hearing was conducted in violation of the plaintiff's due process rights to be given adequate notice of the hearing and, accordingly, to be given an opportunity to be present and to be heard, to present evidence and to cross-examine witnesses against her, the orders issues at that hearing cannot stand. The judgment is reversed and the case is remanded with direction to vacate the orders issued by the court on April 2, 2003."

The plaintiff, Hadley Macpherson,  therefore waited for the Superior Court to

follow that Order, and to vacate the Orders previously made, and return to her the money owed to her and her children.

However, when the plaintiff, Hadley Macpherson, having heard no word after many weeks, phoned the Superior Court, she was told that the chief justice there, Judge Gruendel, refused to do anything in the case of FA-98-0718615, and to take no action on the Appellate Court Order known as AC24175, refusing to issue any orders, or to hold a Hearing to formally make any orders though directed to by the Appellate Court.

The plaintiff, Hadley Macpherson, was then forced to make a Motion for Modification of Child Support, by which to force a Hearing at which the Superior Court would be compelled to vacate the two Orders from the April 2, 2003 Hearing, and consequently order the defendant, Paul Egan, to pay back the money owed to the plaintiff, Hadley Mapcherson, and the two children, Rachel Egan and Loyal Egan.

The plaintiff, Hadley Macpherson, was relying on that money, which she guessed was at the very least upwards of $4,000 to move herself and the child plaintiff, Loyal Egan, down to North Carolina in time for him to start the school she had enrolled him in.

The plaintiff served her Motion on the defendant, Paul Egan, and the parties went to a Hearing on that Motion, on August 4, 2004.

The plaintiff, Hadley Macpherson, appeared again pro se, and the defendant, Paul Egan, again appeared pro se without his Attorney John Berman.

However, once in the building, the defendant, Paul Egan, refused to turn over the financial documents that the plaintiff had subpoenaed of him until just before the Hearing began at 3:00 pm., though both parties had been waiting in the courthouse since 9:00 am to go before the judge.

The plaintiff, Hadley Macpherson, and the defendant, Paul Egan then went before one Judge Presley at 3:00 pm., who after hearing that the plaintiff had only just been given the financial documents by which to determine the exact amount owed to her, decided that a two hour Hearing was going to be needed in order to adequately determine the amount owed from the vacating of the April 2, 2003 Orders, which money, Judge Presley stated, was to be calculated from the time that the April 2, 2003 Hearing had illegally taken place.

In the meantime however, Judge Presley ordered the defendant, Paul Egan, to make an initial payment of $900 to the plaintiff, Hadley Macpherson, for some of the money owed to the child plaintiff, Rachel Egan, since the Hearing to determine the full amount would be several weeks away, and the plaintiff stated that she needed the money sooner.

The new Hearing was scheduled for August 27, 2004, and was scheduled as an evidentiary Hearing, to be heard in front of Judge Presley.

The plaintiff, Hadley Macpherson, now in possession of the financial documents, had the assurance that she would be receiving more than the $4,000 back to her that she had already anticipated, and therefore sent the child plaintiff, Loyal Egan, down to North Carolina, to stay with family friends so that he could be there to start school on time on August 19th, believing that she would have her money in her hand after the August 27, 2004 Hearing by which to move their things down, pay for a rental, and join him.

However, on August 27, 2004, when the plaintiff, Hadley Macpherson, arrived at the Superior Court in Hartford to go before Judge Presley, whose Hearing it was scheduled with, she found that the same judge who had refused to vacate the Orders

before, had transferred the case to himself, though Judge Presley was in the courthouse, and as of that morning still had the parties calendared for a private two hour Hearing.

The plaintiff, Hadley Macpherson, being disallowed from going before Judge Presley, was forced to take her case before that same judge, Chief Justice of the Superior Court at Hartford, Judge Herbert Gruendel.

At the Hearing, Judge Herbert Gruendel, instead of immediately Vacating the Orders as instructed to by the Appellate Court, allowed the defendant Paul Egan to argue why he shouldn't have to pay back the money owed to the plaintiff.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue that the plaintiff had no right to file an Appeal in the first place, and that it was Judge Antonio Robaina's decision and right to Terminate the child plaintiff, Rachel Egan's Child Support if he saw fit.

In defense, the plaintiff, Hadley Macpherson, tried to enter into evidence a copy of her Appellate Brief into the record, to which Judge Herbert Gruendel refused to respond to that request, or accept the Brief.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue that he ought not to have to pay the money back because he was denied all contact with his children.

In defense, the plaintiff, Hadley Macpherson, tried to explain to Judge Herbert Gruendel, that the no contact was as a result of the child plaintiff, Rachel Egan, choosing to maintain her own Restraining Order against her father since 1998, and the child plaintiff, Loyal Egan, testifying that his father had thrown an ax, a hammer, and a boulder at him, and refusing any further contact as a result of those acts committed against him.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue that he

shouldn't be made to pay back the money owed because the plaintiff, Hadley

Macpherson, had been awarded the house at the time of the Divorce in June of 1999, and

that she must therefore be hiding money from that award.

In defense, the plaintiff, Hadley Macpherson, argued that the house was awarded

to her as a result of her proving fault against the defendant, Paul Egan, in the Divorce

Trial, for acts of domestic violence he committed against her for the length of the

marriage, and that she had been awarded the house to be free to either live in it, or sell it

to live off the proceeds as rehabilitative funds.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to complain of an

insurance bill for $52,000.00, that he had seen regarding the child plaintiff, Loyal Egan,

and yet a bill he did not have to in any way pay for as the defendant, Paul Egan, himself is

not being asked to pay, nor has ever been asked to pay, or made to pay, any money in the

eight years since the parties separated, for either child's healthcare costs, except for the

child plaintiff, Rachel Egan's braces.

Upon the defendant, Paul Egan's complaint, the Court made no query as to what

was wrong with the child plaintiff, Loyal Egan, and gave the plaintiff, Hadley

Macpherson, no opportunity to explain.

Judge Herbert Gruendel allowed the defendant, Paul Egan, to argue with no

evidence or testimony offered or provided to support the argument at all, that the

plaintiff, Hadley Macpherson is illegally employed under the table, and is therefore

defrauding the IRS.

When in defense, the plaintiff tried to offer a letter from Dr. Kristina Longshore,

her opthomologist, into evidence, to verify her present eye condition, the defendant, Paul

Egan, argued that the letterhead and letter written by Dr. Kristina Longshore, of which this Federal Court has seen the same, was a forgery and a fake.

When the plaintiff then offered to bring Dr. Kristina Longshore up from Pennsylvania to testify to the truthfulness of the letter, and its contents, if she could be given a Continuance, Judge Herbert Gruendel denied her the opportunity, and disallowed the medical letter from being entered into evidence.

Though the plaintiff, Hadley Macpherson, denied every allegation that day made by the defendant, Paul Egan, and made statements on the record that the defendants allegations were not only unsupported and untruthful, but were irrelevant to the intent and purpose of the Hearing, Judge Gruendel continued to allow the defendant to make his case for why he shouldn't pay the plaintiff, Hadley Macpherson back the money owed .

Judge Gruendel then left for a recess, to which upon the plaintiffs insistence, he took a copy of the plaintiffs Appellate Brief with him, though he still would not enter it into evidence even upon the plaintiffs multiple requests to do so.

When Judge Herbert Gruendel returned, he stated that he was going to refuse to give the plaintiff, Hadley Macpherson, back her money, and though formally vacating the Orders of April 2, 2003, he was going to allow the Child Support Order for Loyal Egan, made on April 2, 2003, to continue to stand for the past year and half.

Judge Herbert Gruendel stated that he differed in his opinion from the Appellate Court, and that in his opinion the plaintiff was estopped from getting back the money owed to her, and had been estopped from filing the Appeal itself in the first place.

The plaintiff, Hadley Macpherson, contends that for a Court state that they are Vacating an Order, and then at the same time state that they are allowing the Order to

stand, is no Vacation of an Order at all, and that Judge Herbert Gruendel knows that.

At best, it is a Vacation in word, but not in deed, which in the final analysis equates to a sham.

It cannot be stated that an Order for Segregation is Vacated, and then in the same breath, that black children still aren't allowed to go to the white children's school.

Judge Herbert Gruendel, on August 27, 2004, defied the Appellate Court, and in doing so, denied the plaintiff, Hadley Macpherson, and the child plaintiff, Loyal Egan, their Due Process Procedural and Substantive Rights once again.

This was a Hearing to Vacate previously illegal orders.

That Vacation was not up for debate, and the return of the plaintiffs money was not up for debate

Further, Judge Herbert Gruendel did not stop at that violation.

Judge Herbert Gruendel went on to deny the child plaintiff, Loyal Egan, any portion of the defendant Paul Egan's Profit Sharing Income, which is annual, and has been received every year for the past fifteen years, and also any portion of the defendant, Paul Egan's Bonuses which are also received yearly.

Though the plaintiff, Hadley Macpherson, argued that the law as stated in the Child Support Guidelines of this state, under 46b - 215a, requires that the child plaintiff, Loyal Egan be given a share of that Profit Sharing Income and Bonus's, Judge Gruendel still refused to do so, though he stated no reason for the deviation from the criteria in the Child Support Guidelines, and though he sat and read the Child Support Guidelines right there in the Hearing.

Under the Child Support Guidelines governed by 46b-215a, if a Court makes a

<u>ruling <u>denying any of the legal entitlements stated within the Guidelines,</u> without stating a</u> <u>reason for deviation,</u>  <u>that ruling cannot stand, is not legal, and can be overturned.</u>

When the plaintiff, Hadley Macpherson, told Judge Herbert Gruendel that she would be Appealing his refusal to award the Profit Sharing, he then issued further Findings.

Judge Herbert Gruendel stated that he found the plaintiff, Hadley Macpherson, guilty of Misrepresentation of her income, though she has no income except her Child Support and Alimony.

When the plaintiff, Hadley Macpherson, asked Judge Herbert Gruendel what he was referring to, as she had no income, and could not have misrepresented any income anywhere, Judge Herbert Grendel would not tell her what he was referring to, but only said "Its in the file", the file being 10 inches thick, and encompassing four folders, which was sitting on his desk.

When the plaintiff, Hadley Macpherson, asked Judge Herbert Gruendel, to please tell her, and allow her to see what it was he was referring to because she was innocent, and had no idea what he was talking about, and needed that she needed to defend herself, he still would not tell her, but just kept saying "It's in the file."

When the plaintiff, Hadley Macpherson, told Judge Herbert Gruendel, that he must, under the law, tell her what he was referring to because she had a legal right to defend herself against such an accusation, he still refused to tell her anything but that it was "in the file".

When the plaintiff, Hadley Macpherson, told the judge that she was going to Appeal the Finding of Misrepresentation as she did not commit any Misrepresentation,

and had a right to defend herself, Judge Herbert Gruendel then told the plaintiff what

document he was referring to, but still refused to let her see it though she asked him

repeatedly over and over again to see that document, and to be given the chance to defend

herself in the Hearing.

After that, Judge Gruendel stated that he was going to make another Finding as to

these Federal Cases now before this Federal Court, a Finding barring the plaintiff, Hadley

Macpherson, from continuing in these Federal Cases, to which once he began to speak,

the plaintiff, Hadley Macpherson interrupted him from speaking, and informed him that

he had <u>absolutely no jurisdiction in these Federal cases</u> by which to render any Finding.

After Judge Herbert Gruendel argued that he did have the right to interpose

himself into the Federal issues, the plaintiff argued that this case was filed nearly a year

before the April 2, 2003 Robaina Hearing, and so had nothing to do with the issues and

events that Judge Herbert Grendel was supposed to be addressing there in Superior Court

on August 27, 2004.

At that point, Judge Herbert Gruendel retracted his words as to making any

Finding in these Federal cases of # 3:02cv1309 and # 3:01cv01555.

During that Hearing on August 27, 2004, Judge Herbert Gruendel ended the

Hearing by stating that it was unlikely that any judge in the Superior Courthouse at

Hartford would have ever given the plaintiff, Hadley Macpherson, any chance to be heard

back in the spring of 2003, even if she had come back in on a Motion to Reopen or

Motion to Reconsider after the April 2, 2003 Robaina Hearing.

That statement was a direct admission to a bias held and perpetuated against the

plaintiff, Hadley Mapcherson, by certain judges of the Superior Court in Hartford, a bias,

and a prejudicial burden borne by the plaintiff, Hadley Macpherson, and her children, which is absolutely illegal, yet which they are absolutely helpless to defend against, given sovereign immunity.

Judge Herbert Gruendel, at the close of the Hearing on August 27, 2004, told the defendant Paul Egan, to write a check for only $115 to the plaintiff, Hadley Macpherson.

On August 27, 2004, the plaintiff, Hadley Macpherson, left the Superior Courthouse in Hartford, without her legally entitled back Child Support, without the correct amount of current Child Support, and without her money to move to North Carolina, where the child plaintiff, Loyal Egan, had just started school only one week before, and was waiting for her.

That money, and the correct amount of Child Support goes to meet the medical needs, and welfare of the child plaintiff, Loyal Egan, in these Federal Cases.

The plaintiff, Hadley Macpherson, after speaking with the Clerk's Office at the Appellate Court, has now had to file another Appeal with the Appellate Court in order to reverse the Orders issued by Judge Gruendel, Orders which a) denied the plaintiff her money entitled to her by the ruling of the Appellate Court, b) allowed the Child Support order of April 2, 2003, to stand for a year and a half despite the Appellate Court Order that it be vacated, c) denied the child plaintiff, Loyal Egan, any portion of his father's Profit Sharing or Bonus Income in defiance of the Child Support Guidelines governed by 46b-215a, and d) found the plaintiff, Hadley Macpherson, guilty of Misrepresentation without giving her any opportunity to defend herself, examine the document used against her, or even be heard.

The plaintiff has knowledge that the actions of Judge Herbert Gruendel are tied

in with the defendants and cause of action in both this case of # 3:02cv1309 and the case of #3:01cv01555.   That information as to the involvement of certain judges at the Superior Court with the defendants in these cases, is alleged with specificity in the plaintiffs Consolidated Amended Complaint.

.The plaintiffs <u>will not</u> be filing an Extension of Time in these two Federal cases by which to gain time to work on their Appellate Brief due in the Appellate Court.  The plaintiff, Hadley Macpherson, will meet her deadline without asking any favor.

However, if the defendants actions have forced the plaintiff, Hadley Macpherson, to now have to bear the burden of litigating once more in the Appellate Court in order to obtain her and her children's  legal entitlements under the law, as well to clear her own good name from an illegal Finding of Misrepresentation, they should not gain advantage in these cases by having created that burden.

Lastly, the plaintiffs admit that the defendants in this case, and in the case of #3:01cv01555, have been accommodating in not opposing the Extensions of Time that were requested by the plaintiffs over the past year.

However, while the plaintiff, Hadley Macpherson, understands that the defendants in these two cases are uncomfortable with being sued, and are entitled to resolve the issues at hand as quickly as possible, the resolving of those issues has not been in any way  prejudiced by the extensions of time granted to the plaintiffs.

The defendants in this case, and in the case of # 3:01cv01555, have suffered no extra or redundant expense by the extensions of time that were granted, as neither of the firms representing them have performed any discovery as of yet, issued any Interrogatories, served any Requests for Admission, or held any Depositions.

If any actual paper work has been generated over these cases other than the four Motions filed by the defendants, referred to earlier, the plaintiff, Hadley Macpherson, has no knowledge of that fact.

For the defendants to suddenly now oppose Consolidation on the basis of those previous Extensions of Time, is not an opposition genuinely based on the defendants perception of unfair grace meted out to the plaintiffs.  The defendants are merely attempting to thwart the plaintiffs ability to file on issues only now just learned of as a result of their adeptness at Fraud.

The defendants could not logically believe that to ask an attorney with no partners to meet a 10 day deadline when they are virtually blinded by an ulcer in the center of their only working eye, is a fair demand in any court.

Under the defendants argument, if someone is victim to several tragic circumstances and events at one time, then they are less deserving of grace, or fairness, than if they had suffered only one tragic event.

Under that argument, an individual is only entitled to Fairness if the tragedy is small, and if the tragedy is greater, the victim should be cut off from Fairness.

The plaintiffs do not have the same definition of Fairness.

Society does not have the same definition of Fairness.

What is fair is not determined by the number of harms that befall a person, or a party in a case.   Fair is determined by what is humane under those harms or circumstances.

Whether a house in Florida is hit by one hurricane or three, makes the family no less deserving of the money due them from their insurance protection.  Whether a person

has one violent Criminal act committed against them, or five, makes that person no less deserving of justice for all five.

This life is not controllable. Each man is given what he is given, and not what he asks for.

The child plaintiffs in these two cases did not ask for Dystonia, and the plaintiff, Hadley Macpherson, did not ask to be almost blinded at the risk of being unable to care for her child, Loyal Egan.

Should the defendants, or the attorneys for the defendants, ever find themselves suffering a similar level of tragedy and grief as the plaintiffs have been suffering over the past year, the plaintiff, Hadley Macpherson, states for the record, that she will not oppose any requests for extensions of time that should be asked for.

Should the defendants, or the attorneys for the defendants, ever find themselves walking in the plaintiff, Hadley Macpherson's shoes, she will sit down, and she will wait for them to catch up, whether that wait be a month long, a year long, or two years long, because waiting is humane.

The defendants in these two cases are all attorneys save one, and as attorneys, may well see these cases as nothing more than paper exchanged between entities.

However, the plaintiff, who is not an attorney, chooses to hold on to her humanity, whether that be to her detriment or not, and will afford the defendants the full measure of grace, and time, they should ever need as human beings.

Rather than complaining of the loss of time, the plaintiffs contend that the defendants should go home, go home and kiss their children, and their grandchildren, and then say to themselves There but for the grace of God go me and mine.

As for present status and whereabouts of the plaintiffs -

Five weeks ago, though having left everything he knows, and having moved eleven hours and six states away, North to South,  living in a strange house without his family, and waiting for the plaintiff to join him, the child plaintiff, Loyal Egan, started traditional school for the first time in his life, has managed to get  all A's on the upwards of twenty or so tests and quizzes given to him, has joined twelve clubs and run for President in four of them, applied to sit as a member of the North Carolina Congressional Youth Advisory Council and was one of the few freshman in the state of North Carolina chosen by Congress to sit that council, and finally, has managed to ask a pretty young girl to the Homecoming Dance, who said yes.

Despite the physical forces working against him, and the efforts of the defendants, the child plaintiff, Loyal Egan, is just fine. The plaintiff, Hadley Macpherson, will be joining him in North Carolina next week.

Should the defendants be hoping that the plaintiffs have lost their resolve to pursue these cases under the weight of the power wielded against them, that hope should be abandoned.


_Rachel Egan_

Rachel Egan

_Loyal Egan_

Loyal Egan

Respectfully Submitted,

_Hadley Macpherson_

Hadley Macpherson

# **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this

day, September 23, 2004, to Attorney Edward Sheehy, of Williams Cooney and

Sheehy, 799 Silver Lane, Trumbull, CT., 06611-0753.

Rachel Egan

Loyal Egan

Plaintiff Pro Se

Hadley Macpherson
P.O. Box 501
Lahaska, PA   18931
(215) 325 - 1001