FILED

2005 APR -4 P 1: 13

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

RACHEL EGAN, LOYAL EGAN     :
and HADLEY MACPHERSON EGAN    :
                           :
       PLAINTIFFS           :
                            :    NO.        301CVO1555 SRU
                            :
VS.                        :    DATE:       APRIL 4, 2005
                            :
SALLY HODGDON            :
                            :
       DEFENDANT          :

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

## MOTION TO STRIKE

Pursuant to Federal Rule of Civil Procedure (FRCP) 12(f), the defendant, Sally Hodgdon (the defendant), respectfully requests the court to strike the Consolidated Amended Complaint dated March 15, 2005 in the above entitled action for the following reasons:

1.    The plaintiffs, Rachel Egan, Loyal Egan and Hadley MacPherson Egan (the plaintiffs) filed the original complaint in the above entitled action on August 16, 2001.

2.    The plaintiffs filed an Amended Complaint on May 14, 2004.

3.    The plaintiffs have now filed a Consolidated Amended

- 2 -

Complaint on March 15, 2005 consisting of 271 pages and 1,545 paragraphs wherein the plaintiffs seek to add three additional defendants-The Communities Law Center, Attorney Sue Ann Shay and Attorney Jane Kinney-Knotek. In addition, the plaintiffs allege claims for conspiracy and breach of fiduciary duty, none of which were alleged in the prior complaints.

4.    The cases of <u>Hadley MacPherson (Egan), Rachel Egan and Loyal Egan v. Attorney Sally Hodgdon</u>, Docket No. 3:01CV01555SRU and <u>Hadley MacPherson (Egan), Rachel Egan and Loyal Egan v. Attorney John Berman, et als</u>, Docket No. 3:02CV1309SRU are not consolidated.

5.    Indeed, the Court by Order dated February 17, 2005 (Exhibit A) denied the plaintiffs' Motion for Consolidation dated June 24, 2004 and therefore the Consolidated Amended Complaint is improper.

6.    In the Consolidated Amended Complaint, the plaintiffs seek to add The Communities' Law Center as a party defendant (paragraph 31).

7.    The Court at a status conference on April 9, 2003 denied

- 3 -

the plaintiffs' Motion to Amend Complaint to Add The Communities' Law Center as a defendant on the grounds that the statute of limitations had already run (Exhibit B, April 9, 2003 transcript of status conference, pp. 13-32) and, therefore, the plaintiffs are precluded from adding The Communities Law Center as a defendant.

8.   The plaintiffs also seek to add Attorney Sue Ann Shay and Attorney Jane Kinney-Knotek members of The Communities' Law Center as additional defendants (paragraphs 27 and 30).

9.   At the status conference on April 9, 2003, the plaintiff, Hadley MacPherson Egan represented to the Court that the only attorney at the Communities' Law Center whom she claimed was responsible for wrong doing was the defendant Hodgdon. (Exhibit B, pp. 17-18).

10.  The plaintiffs have failed to satisfy the requirements of (FRCP) 15(c)(2) and 15(c)(3)(A) and (B) in regard to adding Attorney Shay and Attorney Kinney-Knotek as defendants and therefore Attorney Shay and Attorney Kinney-Knotek should be stricken as defendants.

- 4 -

11.   Any claims against Attorneys Shay and Kinney-Knotek are
      barred by the 3 year statute of limitations set forth in
      § 52-577 Conn. Gen. Stat. (Rev. 1958).

12.   The plaintiffs instituted the above entitled action by
      complaint filed on August 16, 2001 in which they set
      forth two claims:

      A.    Claim I - Breach of contract, legal malpractice and
            negligence.

      B.    Claim II - Misrepresentation and intentional tort -
            coercion and claimed $100,000 damages and release
            from the defendant Hodgdon's legal representation.

13.   In the Consolidated Amended Complaint, the plaintiffs
      seek to add the following additional causes of action
      none of which were alleged in the original complaint or
      in the May 14, 2004 Amended Complaint:

      A.    Conspiracy between the defendant Hodgdon, the
            proposed defendants, Shay and Kinney-Knotek and The
            Communities' Law Center and the defendant John
            Berman, et al (paragraphs 44-72, 134, 164, 165,
            167, 169, 205, 206, 207, 208, 1030-1204);

- 5 -

B.   Breach of fiduciary duty (paragraphs 191, 233, 234, 235, 302, 303, 307, 329);

14.   To allow the Consolidated Amended Complaint to be the operative complaint in this action would result in undue delay, trial inconvenience and prejudice to the rights of the defendant Sally Hodgdon in regard to this action which has been pending against her in this court since August 16, 2001.

WHEREFORE, the defendant respectfully requests the Court to strike the Consolidated Amended Complaint.

THE DEFENDANT
SALLY HODGDON

BY _____

Edward Maum Sheehy
WILLIAMS, COONEY & SHEEHY, LLP
799 Silver Lane
Trumbull, CT  06611-0753
Tel.  (203)  380-1741
Fed. Bar #ct 04212

- 6 -

## ORDER

So Ordered:

_____
U.S. DISTRICT COURT JUDGE

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the date hereon to all counsel of record and pro se parties and the following:

**Hadley MacPherson (Egan) Pro Se**
**P.O. Box 501**
**Lahaska, PA  18931**

**Hadley MacPherson (Egan) Pro Se**
**2015 Mackenzie Creek Drive**
**Charlotte, NC  28270**

**Loyal B. Egan**
**P.O. Box 501**
**Lahaska, PA  18931**

**Loyal B. Egan**
**2015 Mackenzie Creek Drive**
**Charlotte, NC  28270**

**Rachel J. Egan**
**P.O. Box 501**
**Lahaska, PA  18931**

**Rachel J. Egan**
**2015 Mackenzie Creek Drive**
**Charlotte, NC  28270**

_____
Edward Maum Sheehy

# **EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RACHEL J. EGAN, ET AL.,  :
    Plaintiffs,  :
                      :
                      :  CIVIL ACTION NO.
    v.  :  3:01cv1555 (SRU)
                      :
SALLY HODGEDON, ET AL.  :
    Defendants.  :
                      :

## ORDER

The plaintiffs' motion to consolidate this case with <u>Macpherson, et al. v. Berman, et al.</u>, No. 3:02cv1309 (SRU) (doc.# 72) is denied. Based on the amended complaints in these cases, both of which were filed on May 14, 2004, there do not appear to be sufficient parties or issues in common to warrant consolidation. The parties, however, are encouraged to cooperate in coordinating discovery in these cases so that duplicative depositions of witnesses can be avoided.

Plaintiffs have suggested in certain pleadings a desire to file a further amended complaint. Any such pleading must be filed by **March 10, 2005, or it will be barred**. Plaintiffs are hereby notified that only one of the named defendants has been served with a summons and complaint; any defendant not properly served by March 31, 2005 will be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Defendant Sally Hodgedon shall respond to either the May 14, 2004 amended complaint or any later filed amended complaint by **April 1, 2005**. Any other defendant served with a summons and complaint shall respond to the plaintiffs' operative complaint within twenty days of such service.

The following additional deadlines shall apply in this case:

Disclosure of plaintiffs' expert witness(es): **August 1, 2005**;

Disclosure of defendants' expert witnesses: **October 1, 2005**;

All discovery shall be completed (not propounded): **December 1, 2005**; and

Filing of dispositive motions: **January 15, 2006**.

These deadlines will be extended only for exceptional cause.

It is so ordered.

Dated at Bridgeport, Connecticut, this 17th day of February 2005.

                                        /s/ Stefan R. Underhill
                                        Stefan R. Underhill
                                        United States District Judge

## EXHIBIT B

COPY

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

HADLEY MACPHERSON, ET AL        :   No. 3:01CV-1555 (SRU)
                                :   915 Lafayette Boulevard
            vs.                 :   Bridgeport, Connecticut
                                :
                                :   April 9, 2003
SALLY HODGEDON, ET AL           :

- - - - - - - - - - - - - - - - x


STATUS CONFERENCE


B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.



A P P E A R A N C E S:

    FOR THE PLAINTIFF:

            HADLEY MACPHERSON, Pro Se
            RACHEL J. EGAN, Pro Se
            LOYAL B. EGAN, Pro Se
            P. O. Box 501
            Lahaska, Pennsylvania  18931


    FOR THE DEFENDANT:

            WILLIAMS, COONEY & SHEEHY
                799 Silver Lane
                Trumbull, Connecticut  06611
            BY:  EDWARD M. SHEEHY, ESQ.


                Susan E. Catucci, RMR
                Official Court Reporter
                915 Lafayette Boulevard
            Bridgeport, Connecticut  06604
                Tel: (203) 246-6385

1    going to have any great benefits and could have some

2    disadvantages, so I'm going to deny that motion.

3            Let's turn to the Motion to Dismiss which is

4    based on failure to comply with Rule 26(f).

5            MS. MACPHERSON:  I have my 26(f) ready and I

6    wanted to turn it in but I didn't know if we were

7    consolidated or not, in which case the allegation for the

8    26 would have to be changed which is why I didn't --

9            THE COURT:  Okay, I was just going to say I'm

10    going to deny that motion as well.  We're here and we're

11    going to go through the planning process today as a

12    practical matter and so there really isn't any prejudice.

13    It's unfortunate that the case has been around as long as

14    it has been but now that get can done.  But, you know, I

15    think cases should be heard on the merits and not on a

16    procedural argument.  And in a case involving pro se

17    plaintiffs is not one that I'm going to grant without a

18    lot of thought.

19            So I'm going to deny the Motion to Dismiss and,

20    as I said, I think we ought to take up the planning

21    process in effect today and talk about scope of discovery

22    deadlines for discovery, so forth, but before we do that,

23    let's move to the last motion which is the Motion to Amend

24    the Complaint.  And it seems to me that there are really

25    at least two parts to this motion.  The more significant

14

1    one in my view is the aspect of the motion that seeks to

2    add a party and that has a relatively significant argument

3    opposing the motion and I want to give the plaintiffs a

4    chance to argue it.

5         I don't know if you fully understand the nature

6    of the opposition but, in essence, it is that in order to

7    avoid a Statute of Limitation bar to the claim against,

8    what is it, Community --

9         MS. MACPHERSON:  Community Law Center.

10        THE COURT:  Yes, the Community Law Center, you

11   would have to show -- because I take it you would agree

12   that the time for the Statute of Limitations as to that

13   entity has run?

14        MS. MACPHERSON:  Right, I didn't realize that at

15   the time.  My mistake.

16        THE COURT:  So the argument is because the

17   Statute of Limitations has otherwise run, unless you can

18   demonstrate that that claim relates back, meaning it is

19   one that should be treated as having been brought in

20   effect at the same same time as your claim against

21   Hodgedon, then to permit the amendment would be futile

22   because it would simply be dismissed or summary judgment

23   would be granted on Statute of Limitation grounds.  And in

24   connection with that, I wanted to understand perhaps a

25   little better why you think you want to sue that entity.

1    The impression I had from your papers is you were

2    concerned about whether or not there would be malpractice

3    insurance available to cover the claims against Attorney

4    Hodgedon.  Is that part of your concern?

5              MS. MACPHERSON:  At the present time, because

6    that's the only thing I don't know in the case, is what

7    anybody's malpractice insurance is, I don't know how it

8    works at Sally's firm -- I'm sorry, Attorney Hodgedon's

9    firm.  Attorney Hodgedon's firm is unusual and I only just

10   learned recently that actually there is someone, there is

11   another party that owns the firm beyond the Community Law

12   Center, so there is somebody who owns the Community Law

13   Center, actually four different parties who own it and,

14   again, it was merely because I didn't understand the law,

15   which is not anybody's fault but my own, that I didn't

16   understand that when we, when I named her originally that

17   I wasn't naming them.  She's a full partner, she's a

18   founding partner in the firm.  I saw it all as her.  They

19   are all nuns there and it's a nun firm and they are owned

20   by nuns, and it's a small firm but it's jointly owned by

21   four other entities and everything that took place, every

22   phone call, everything that's being alleged in the

23   amendment and the meeting between Attorney Hodgedon and my

24   daughter is that alleged in there, as far as what Attorney

25   Hodgedon did in the course of, was done in the conference

1    room.  Every meeting we ever had was in the office of the

2    Community Law Center.  Every bill that Sally ever sent

3    was, had a Community Law Center name on it.  Sally's card

4    has Community Law Center.  Every phone call ever sent was

5    with Community Law Center on it.  She acted as their

6    agent, she's a founding partner, and technically she

7    represents them.  She acted in, the scope of her

8    employment, the actions she took against the children were

9    in the scope of her employment, and in my mind it was my

10   understanding that that makes her, these transactions

11   makes respondeat superior.

12            I guess the thing is I don't see this as an

13   individual.  I guess I don't feel she acted in a renegade

14   manner, she acted with her firm, and the other ones were

15   there when we were there and were present and I guess I

16   certainly would have put the name, had I not understood,

17   had I misunderstood -- had I not misunderstood that they

18   weren't, that it wasn't adequate just to put her name, I

19   would have from the very beginning.

20            The actions that are alleged against her and the

21   actions alleged against Community Law Center all are the

22   same actions and took place at the same time, at the exact

23   same time frame, everything was at the same time, what

24   happened.

25            THE COURT:  Your only claim, we don't have the

1   proposed complaint and so it's a little unclear still

2   exactly what your claim against Community Law Center would

3   be, but my understanding is that your claim for that

4   entity's liability is based exclusively on the actions of

5   Attorney Hodgedon?

6        MS. MACPHERSON:  They received my money, the

7   Community Law Center received my money for representation.

8        THE COURT:  Right, but in terms of any

9   wrongdoing, no one other than Hodgedon is alleged to have

10  done anything wrong, is that right?

11       MS. MACPHERSON:  You mean any other person,

12  individual, actual person?

13       THE COURT:  At the firm, right.

14       MS. MACPHERSON:  I guess I feel that they are

15  responsible.  She's the lead partner, she's --

16       THE COURT:  Well, I'm not suggesting that they

17  are not.  I just want to make sure that the wrongdoing

18  that you're claiming is wrongdoing that Sally Hodgedon

19  allegedly did.

20       MS. MACPHERSON:  Personally did, yes.

21       THE COURT:  And you're in effect claiming that

22  because she's a partner, her firm is also liable for her

23  actions?

24       MS. MACPHERSON:  Right.

25       THE COURT:  But you're not claiming there was

1    somebody else who also did some wrongdoing?

2         MS. MACPHERSON:  No.

3         THE COURT:  That's what I'm trying to figure

4    out.  Okay.  All right, well --

5         MS. MACPHERSON:  I'm really saying they had a

6    duty, any of them, they all knew what was going on because

7    it's a very small firm.  The number you call, you speak to

8    the other ones, they all knew what was going on.  None of

9    that was hidden.  So in my mind they had a duty and she is

10   the lead partner of the firm and founding partner and it

11   was a mistake and I understand the Statute of Limitations

12   bars it, but --

13        THE COURT:  Okay.  Mr. Sheehy, focusing on the

14   question of relation back?

15        MR. SHEEHY:  Well, I set forth our position in

16   our Memorandum of Law dated February 25, 2003, and keeping

17   in mind that Ms. Hodgedon was appointed by the court to be

18   the attorney and guardian for these two young children --

19        MS. MACPHERSON:  Not until three years further

20   for the one -- just the one.

21        MR. SHEEHY:  Excuse me, she was appointed by the

22   court to be attorney and guardian ad litem for these

23   children and it seems to me clear that any claim against

24   the Community Law Center is barred by the Statute of

25   Limitation.  The Community Law Center was not appointed to

1  be guardian or attorney for the minor children.

2       THE COURT:  But she was at all times a partner

3  in the firm?

4       MR. SHEEHY:  As far as I know, yes.

5       MS. MACPHERSON:  Founding partner.  And there is

6  one other thing.  I didn't know of the existence of the

7  four other attorneys until just two weeks ago.  That's not

8  something they announce.

9       THE COURT:  All right.

10      MR. SHEEHY:  That's not before the court.

11      MS. MACPHERSON:  May I make one more argument

12  which you don't -- I did not know when she was appointed

13  that she was a nun.  One of the allegations against her,

14  obviously the one regarding my son, has to do with her

15  acting in a course of manner towards him by spouting

16  religion to him and trying get him to put himself in

17  danger using religious ethics, her religious tenents of

18  religion which we are of a different religion but it

19  doesn't matter -- the religion is the issue.  I am

20  claiming a certain type of allegation having to do with

21  religion and her having overstepped her bounds into

22  religion.  The fact that they are all nuns there, that we

23  were unaware of that, that it is a nun firm, I do take

24  offense and am alleging against the firm because I did

25  feel it was a religious, a way to religiously step into

1    bounds that they shouldn't have.

2         And the fact that I end up finding out that they

3    are actually owned by other religious groups, the

4    Community Law Center is -- I guess what I'm saying is you

5    can't -- in my mind I can't separate her from the fact

6    that that's a nun firm, that she acted an as nun rather

7    than as attorney, and the fact that it is a nun firm and

8    she's a founding partner with four other nuns in that

9    firm.  They joined to found that firm as part of their

10   religious thing.  We had no choice in that, did not know

11   of that when she was appointed.

12        And just to set the record straight, she was not

13   guardian ad litem for both children and was only appointed

14   guardian for this child, Loyal Egan, one year ago, a year

15   and-a-half ago.  So she was not guardian ad litem.  Thank

16   you.

17        THE COURT:  Okay, well, the issues that you're

18   just raising now, you know, I think are going to be barred

19   by the Statute of Limitations because they haven't been

20   raised yet and the question is whether any claims that you

21   want to raise against the firm or -- in effect should

22   relate back.  These are new onces that can't relate back

23   to claims you've already made because you haven't made

24   these claims, so legally you can't amend your complaint to

25   raise the concerns that you just mentioned because those

1  would be barred by the Statute of Limitation.

2          MS. MACPHERSON:  But I mean the thing --

3          THE COURT:  Excuse me?

4          MS. MACPHERSON:  No, I mean in the amendment of

5  the original complaint that she attempted to coerce Loyal

6  Egan using religion.

7          THE COURT:  Yes.

8          MS. MACPHERSON:  So that -- that is not new --

9          THE COURT:  No, that's not new as to Attorney

10  Hodgedon, but to complain about the firm being a nun firm

11  or acting inappropriately in some way other than what was

12  already in your --

13          MS. MACPHERSON:  I see, okay.

14          THE COURT:  That doesn't relate back.  To

15  relate back, it has to be related to something that you've

16  already claimed in a stronger sense than -- I know that

17  you've raised the issue of her use of religion but you

18  haven't raised concerns about her being part of a firm

19  that was religious-based or owned by a religious entity

20  or, you know, acting as a group of nuns rather than as a

21  group of lawyers.  Those claims weren't brought.

22          MS. MACPHERSON:  I see.  By saying they acted as

23  a group of nuns, meaning I can still make that claim

24  against her but I can't make it against them because it

25  wasn't in the original complaint?

1    THE COURT: Well, there's some question whether

2    you can make it against her either because, again, Statute

3    of Limitation has passed, so that it would also have to

4    relate back to a claim that you've already made against

5    her. I don't want to get too deeply into this but let's

6    deali with what we've got.

7    First, the basic standard is that in an amended

8    pleadings alleging a new or different claim or defense

9    will not relate back unless it arose out of the conduct,

10    transaction or occurrence that was set forth in the

11    original pleading. That's your basic standard, so my

12    point on the issue about ownership and acting as a nun

13    rather than as a lawyer, those at least arguably weren't

14    set forth in the original pleading.

15    MS. MACPHERSON: Because I wasn't specific

16    enough?

17    THE COURT: Well, it didn't go that far. You

18    had the -- you had her allegedly using her religious views

19    but you didn't have --

20    MS. MACPHERSON: I didn't say she was a nun.

21    THE COURT: Well, or more broadly, you didn't

22    suggest that the firm, that as partner in the firm she was

23    unduly influenced because she was a nun, she was owned by

24    religious organizations, whatever. These are new concepts

25    is the point.

1      MS. MACPHERSON:  Okay.

2      THE COURT:  Mr. Sheehy, do you want to address

3  whether or not the entity had adequate notice when its

4  partner was sued in this matter?

5      MR. SHEEHY:  Well, in the posture of the case

6  where we initially challenged the sufficiency of the

7  process, and the court has ruled on that, it had withdrawn

8  that.  The state of the record then is that, that

9  Ms. Hodgedon was served by and she's a partner of the

10  firm, so I suppose that's constructive knowledge to the

11  firm.

12      MS. MACPHERSON:  Your Honor, may I say something

13  to that?  She was served at the firm and so they knew and

14  she was -- which you already know -- she was also told in

15  the courtroom a couple months earlier in open court about

16  the suit.

17      The other thing is I just have a question and I

18  don't know if we can address it today or not.  The day

19  that this suit was filed, this suit was filed at nine

20  A. M., at ten A. M.  We were in court together, Attorney

21  Hodgedon, myself, Attorney Berman, my husband, and we

22  ended up being in court and she ended up representing the

23  children for another four months and those allegations I

24  couldn't put in the amended complaint because it can only

25  go up to the time that the claim is filed so that I

1    actually, because there was another four or five months of

2    representation to which more things happened but only up

3    until August 16th, this case was filed on August 16, we

4    stood in court at ten o'clock on August 16th, ten o'clock,

5    and she continued to represent for nine months, but we had

6    five months more of coercion.  That's the insult, and my

7    question is can that be addressed now or do I have to make

8    a motion because those are new claims?  That's all I was

9    trying to say, these are new claims.  They are out of the

10   same representation because I asked for her to be removed

11   that day on August 16th and she was not removed that day

12   and was kept on as attorney.  And so it was, she was -- it

13   was within the same, she was doing the same job.  The job

14   just continued, that the amended complaint by the rules

15   cannot mention anything that took place on August 16 or

16   after, after 9 A. M. after this was filed.

17            THE COURT:  All right.

18            MS. MACPHERSON:  And when we were there in court

19   on the 16th and on those subsequent days was just a

20   continuance of everything that was prior to August 16th

21   when this was filed, so it wasn't new issues.  It was the

22   same issues that we were standing in there on August 16

23   for after this was filed here and we were up in Hartford,

24   was a continuation of eight hearings -- that continued for

25   four more hearings, this issue continued for four more

1    hearings after the filing of this complaint, so it's not a

2    new set of things.  It's the same representation, her

3    legal representation of the children.

4            THE COURT:  Okay.  I'm not sure I completely

5    follow what claim it is you want to make with respect to

6    that period of time.

7            MR. SHEEHY:  I think in response to Your Honor's

8    question whether the Community's Law Center received

9    notice of the institution of this action by the service,

10   alleged service on Sally Hodgedon.  As I indicated, I

11   think that probably would constitute constructive notice

12   that we did because she was a partner of the firm.  Okay?

13           THE COURT:  Right.

14           MR. SHEEHY:  That's only half of Rule 15(c).

15   The other part that, and they knew or should have known

16   that, but for a mistake concerning the identity of the

17   proper party, the action would have been brought against

18   the party.

19           THE COURT:  Right.

20           MR. SHEEHY:  And that's the part we contest

21   because the plaintiff in her own moving papers, that she

22   sent to us anyways, says that she had from the beginning

23   originally intended that the Community's Law Center should

24   be a party to this action, so I don't think they've

25   satisfied the second part of Rule 15(c) and, therefore,

1  shouldn't relate back and it's barred, and is also barred

2  by the Statute of Limitation.

3      THE COURT:  I think that's right.  That's what

4  the rule provides and that's -- it's not clear to me that

5  there was a mistake here in the sense that, I mean,

6  sometimes, for example, you can get, the party will be

7  named one, you know, the firm changed its name or there's,

8  just as you had, a typo in her name.

9      MS. MACPHERSON:  Right.

10      THE COURT:  You know, or even you thought she

11  was with X, Y, Z firm and in fact she was with --

12      MS. MACPHERSON:  Got it.

13      THE COURT:  Whatever.  We don't have that kind

14  of mistake in this case.  What we have is maybe an

15  oversight.  Maybe you felt like you made a mistake and

16  that you should have included her.

17      MS. MACPHERSON:  It was ignorance, right.

18      THE COURT:  But it wasn't a mistake in the sense

19  that --

20      MS. MACPHERSON:  A mishap.

21      THE COURT:  It wasn't you got the wrong,

22  slightly wrong name or you were misled about who this firm

23  ought to be.  You didn't try and sue a firm.

24      MS. MACPHERSON:  No, I thought if I was suing

25  her that I was suing the firm and that's ignorance, right.

1    THE COURT:  Well, the other, I guess, related

2    point -- and this is going back to what's in your papers,

3    my impression was that you were concerned to sue the firm

4    primarily to get malpractice insurance coverage and I

5    don't know what the, if there is a policy in this case or

6    what it provides, but you should be aware that it's not at

7    all unusual for firms to purchase policies covering their

8    employees and/or their partners.

9    MS. MACPHERSON:  So whether they are sued or not

10   doesn't make any difference?

11   THE COURT:  It my not -- if your concern is

12   collection of any judgment you may obtain, it may or may

13   not be something that you need to worry about.  So I'm

14   going to deny the motion to amend to the extent that it

15   seeks to add another party.

16   I'm going to grant it -- well, actually I'm not

17   going to grant it.  What I'm going to do is suggest this:

18   I'm going to ask you to refile your Motion to Amend.

19   Doesn't have to be lengthy, it can just be a short motion

20   to amend, and attach the proposed amended complaint,

21   because you did suggest some other changes you wanted to

22   make, and then bring in other paragraphs and so forth if

23   you still want to make these changes.

24   MS. MACPHERSON:  Right.  All I did with the

25   amendment, it's all numbered paragraphs, it's all done in

1    the proper format so they can aver properly.  What I did

2    was be specific about the allegations.  That was the only

3    difference.  They are not new allegations, at least to me.

4              THE COURT:  Right.

5              MS. MACPHERSON:  And even as far as the --

6              THE COURT:  I'm just going to suggest that you

7    do this:  I'm going to deny your Motion to Amend in all

8    other respects; that is, other than adding a party,

9    without prejudice and ask you to refile it.

10             MS. MACPHERSON:  Okay.

11             THE COURT:  Just very brief form.

12             MS. MACPHERSON:  Refile the motion, right.

13             THE COURT:  You know what?  Take that back.

14   There is no answer yet.

15             MR. SHEEHY:  Correct.

16             MS. MACPHERSON:  That's right.

17             THE COURT:  And have you amended your complaint

18   yet?

19             MS. MACPHERSON:  I didn't bring it in --

20             THE COURT:  You haven't filed an amended

21   complaint before?

22             MS. MACPHERSON:  No, I did not, ever.

23             THE COURT:  You have a right, as a right you can

24   amend your complaint once until an answer is filed, so you

25   can file your amended complaint --

1          MS. MACPHERSON:  Okay.

2          THE COURT:  -- making those changes other than

3     adding a party.

4          MS. MACPHERSON:  Okay, and the supplement, can

5     it be part, can I have an amended and supplemented

6     complaint as one document or do you want the two

7     documents, my request to supplement?  It was one

8     representation continuous that she had past August 16.

9          THE COURT:  What you need to do is file whatever

10    complaint it is you want against Sally Hodgedon.

11         MS. MACPHERSON:  But I'm barred after August 16

12    of mentioning anything unless I do it in a supplement?

13         THE COURT:  Well, call it an amended complaint.

14    Put in whatever you want to put in, and if there is some

15    problem with it, I'm sure we'll get a Motion to Dismiss

16    the Amended Complaint, but you ought to put in whatever

17    claims you want.

18         MS. MACPHERSON:  Can I label it Amended and

19    Supplemental?

20         THE COURT:  If you want to, sure.  Amended is

21    fine, amended is -- that's all you need to say, but if you

22    want to say amended and supplemental, that's fine too.

23         MS. MACPHERSON:  Because the other problem is

24    the original complaint alleges certain actions and does

25    not allege the actions that took place after August 16

1   because I couldn't have known they were going to take

2   place when we walked into court at ten o'clock --

3        THE COURT:  That's fine.  You can just call it

4   amended complaint and there is no, there is no magic to

5   the name that you put on that document.  The point is you

6   should promptly file what it is you want to file.

7        MS. MACPHERSON:  But there was the problem with

8   the 26, I wrote my 26(f) according to the, up to the

9   morning of August 16.

10       THE COURT:  Okay, all right, doesn't matter.

11       MS. MACPHERSON:  Should I throw in the rest of

12  the allegations up to after August 16 that's part of the

13  supplemental where I got confused on the 26(f) --

14       THE COURT:  Just put in whatever complaints you

15  have about Sally Hodgedon.

16       MS. MACPHERSON:  Okay.

17       THE COURT:  And call it an Amended Complaint and

18  file it.

19       MS. MACPHERSON:  And my 26(f) --

20       THE COURT:  Don't worry about the 26(f), we can

21  do it that separately.  The 26(f) will be taken care of

22  today.

23       MS. MACPHERSON:  All right.

24       THE COURT:  So are you clear, though, what you

25  need to file?

1          MS. MACPHERSON:  A new Request to Amend?

2          THE COURT:  No, you don't need to do a request.

3          MS. MACPHERSON:  Because he didn't answer.

4          THE COURT:  You have the right to file.  Just

5    file, put together whatever your complaints are against

6    Sally Hodgedon, not against her law firm, put them in a

7    document called an Amended Complaint, file it, send him a

8    copy.

9          MS. MACPHERSON:  Okay.

10          THE COURT:  Okay?

11          MR. SHEEHY:  Can you emphasize, Your Honor, that

12    I get a copy of any pleadings that are filed with the

13    court?

14          THE COURT:  Sure.

15          MS. MACPHERSON:  Of course.

16          MR. SHEEHY:  Well, we have a list here of

17    instances where I haven't received any of these pleadings.

18          MS. MACPHERSON:  That's --

19          THE COURT:  Whatever.  Everybody, as of today

20    everybody knows anything that comes to me or to the court

21    has to go to your opponent so -- that should be done and

22    that's what the certification page is for.

23          MS. MACPHERSON:  Of course.

24          THE COURT:  For certifying that that's what's

25    happened, and typically if you haven't properly filled

1  this out by specifically listing who you sent it to and

2  their address, then it is returned by the clerk's office,

3  so everybody will have to do that.

4        All right, so just to be clear, the motion to

5  amend is denied insofar as it seeks to add a party.  And

6  is denied as moot without prejudice to the extent that it

7  seeks to make any other changes.  The plaintiffs have a

8  right to file an amended complaint since there has been no

9  answer filed.

10        Okay.  Let's turn to what would otherwise be

11  26(f) report, and we are going to do in essence a little

12  planning procedure here.  But before we do that, have we

13  addressed all the pleadings issues?  That is, we're going

14  to get a new amended complaint, it's going to have

15  whatever claims in it you want to put in it, and we'll get

16  another, a motion or answer in response to that amended

17  complaint, but otherwise we're going -- are there any

18  other pleadings issues that anybody is aware --

19        MS. MACPHERSON:  No.

20        MR. SHEEHY:  No, Your Honor.

21        THE COURT:  Let's turn to the 26(f) process.

22  And just for the record, I'm going to waive the

23  requirement of a 26(f) report in this case and we're going

24  to use this conference as the party's planning mechanism.

25  And just to run through 26(f), jurisdiction I don't