# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

### AT BRIDGEPORT

HADLEY MACPHERSON (EGAN)

      and

RACHEL EGAN

      and

LOYAL EGAN

         plaintiffs

VS.

ATTORNEY SALLY HODGDON

      and

THE COMMUNITIES' LAW CENTER

      and

SISTERS OF SAINT (ST.) JOSEPH

      and

3:01CV01555  SRU

APRIL 30, 2005

CIVIL ACTION

9 (C) 2 STATEMENT

IN SUPPORT OF

PLAINTIFFS OBJECTION TO

DEFENDANT ATTORNEY

SALLY HODGDON'S

MOTION TO STRIKE

AMENDED COMPLAINT

DATED MARCH 15, 2005

**ATTORNEYJANE KINNEY - KNOTEK**

and

**ATTORNEY SUE ANN SHAY**

and

**SISTERS OF MERCY**

and

**SISTER OF NOTRE DAME**

and

**DAUGHTERS OF THE HOLY SPIRIT**

defendants

## 9 (C) 2 STATEMENT IN SUPPORT OF

## PLAINTIFFS' OBJECTION TO DEFENDANT

## ATTORNEY SALLY HODGDON'S MOTION TO STRIKE

## AMENDED COMPLAINT DATED MARCH 15, 2005

Section A:

The plaintiffs, Hadley Macpherson, Rachel Egan, and Loyal Egan, respond to the

defendants Motion to Strike, as being a Motion to Dismiss for Summary Judgment, and aver

in response as follows:

1.    Admitted.  The plaintiffs filed their Complaint on August 16, 2001.

2.    Admitted.  The plaintiffs filed an Amended Complaint on May 14, 2004.

3.    Admitted in part.  Denied in part. Affirmative defense or Counter Claim

       Section B of this document, and in accompanying Memorandum of Law.

             The plaintiffs filed an Amended Complaint on March 15, 2005, which

       seeks to add three new defendants, The Communities' Law Center, Attorney

       Sue Ann Shay, and Attorney Jane Kinney - Knotek.

             However, though the plaintiffs do allege claims for Breach of

       Fiduciary Duty and Conspiracy, they deny that breach of Fiduciary Duty was

       not a claim available to them under the set of facts previously described in the

       Original Complaint filed on August 16, 2001, and the Amended Complaint

       filed on March 14, 2004, if brought within the Statute of Limitations.

1

4.    Admitted. Affirmative defense or Counter Claim in Section B of this

document, and in accompanying Memorandum of Law .

The case cases Hadley Macpherson, (Egan), Rachel Egan and Loyal

Egan v. Attorney Sally Hodgdon, Docket NO. 3:01CV01555 SRU and Hadley

Macpherson (Egan), Rachel Egan and Loyal Egan v.Attorney John Berman, et

als, Docket No. 3:02CV1309SRU are not at present consolidated, but the issue

of Consolidation is pending before the Court, and if granted, may cure defect .

5.    Admitted.  Denied in part.  Affirmative defense or Counter Claim in section

B of this document and in accompanying Memorandum of Law.

The Court did, on February 17, 2005, deny the plaintiffs Motion for

Consolidation dated June 24, 2004, however, the plaintiffs deny that their

Consolidated Amended Complaint is improper at this time, as the issue of

Consolidation is pending, which if granted may cure defect.

6.    Admitted.   The plaintiffs now seek to add The Communities' Law Center

as a party defendant.

7.    Admitted in part.  Denied in part.  Affirmative defense and Counter Claim in

Section B of this document and in accompanying Memorandum of Law.

The Court, at a Status Conference on April 9, 2003, did deny the

plaintiffs the opportunity to add The Communities Law Center as a party

defendant on the grounds that the Statute of Limitations had already run.

However, the plaintiffs' deny that they are precluded from adding

The Communities' Law Center, and further argue that they should not be

2

precluded from adding The Communities Law Center since the Statute of

Limitations, as of April 9, 2003 <u>had not in fact tolled</u>.

8.    <u>Admitted.</u>   The plaintiffs seek to add Attorney Sue Ann Shay and Attorney

Jane Kinney - Knotek, as party defendants.

9.    <u>Admitted.</u>  <u>Affirmative defense and Counter Claim in Section B of this</u>

<u>document and in accompanying Memorandum of Law.</u>

    The plaintiffs, when asked by the Court at the status conference

on April 9, 2003, whether they were claiming that anyone else in the firm had

been guilty of wrongdoing, the plaintiffs answered "No."

10.   <u>Denied.</u>   <u>Counter Claim in Section B of this document and in accompanying</u>

<u>Memorandum of Law.</u>

    The plaintiffs have not failed to satisfy Federal Rule 15(c) (2) and

15 ( c ) (3) (A) and (B) in regard to adding Attorney Shay and Attorney

Kinney - Knotek as party defendants to this case, and they therefore should

not be stricken.

11.   <u>Denied.</u>  <u>Counter Claim in Section B of this document and in accompanying</u>

<u>Memorandum of Law</u>.

    Claims against Attorneys Shay and Kinney-Knotek are not barred

by the three year Statute of Limitations set forth by   § 52-577 C.G.S..

12.   <u>Admitted.</u>  The plaintiffs did set forth claims for Breach of Contract, Legal

Malpractice, Willful Wanton and Reckless Negligence, Fraud, Coercion, and

Intentional Tort.

13.   <u>Admitted in part.</u>  <u>Denied in part.</u>  <u>Affirmative defense argued in Section B of</u>

this document and in accompanying Memorandum of Law.

The plaintiffs, in their Amended Complaint dated March 15, 2005 do now seek to add the claims of Conspiracy and Breach of Fiduciary Duty.

However, though the plaintiffs do allege a claim for Breach of Fiduciary Duty and Conspiracy, they deny that breach of Fiduciary Duty was not a claim available to them under the set of facts previously described in the Original Complaint filed on August 16, 2001, and the Amended Complaint filed on March 14, 2004, if brought within the Statute of Limitations.

14.    Denied.  Argued in Section B of this document, and in accompanying Memorandum of Law.

The plaintiffs deny that to allow the Consolidated Amended Complaint to be an operative complaint in this action would result in undue delay, trial inconvenience and prejudice to the rights of the defendant, Attorney Sally Hodgdon, in regard to this action.

## Section B:    Affirmative Defenses and Claims in Opposition

[As to Defendants numbers]

3.    Under the set of facts previously alleged in the plaintiffs Original Complaint dated August 16, 2001, and Amended Complaint dated March 14, 2004, as well as accompanying Affidavits of Rachel J. Egan and Loyal B. Egan, a claim for Breach of Fiduciary Duty would arise.

4

For an attorney to commit the intentional Fraudulent acts alleged in the prior Original Complaint and prior Amended Complaint, that attorney could not be acting as trusted friend, and in acting deceitfully, has, as a matter of course in exercising deceit, breached his or her duty to act with truth and fairness to their client, and in their clients best interest.

That the plaintiff did not allege the claim in words does not mean that the claim was not implied, and would be able to have its elements met in the process of proving the facts alleged, and therefore, could have added the claim to her Cause of Action as that claim did relate back to the facts set forth in the Original and Amended Complaint, and particularly since the Statute of Limitations has not tolled under § 52-577 and § 52-595 C.G.S.A..

4.      This case of Macpherson, Egan v. Hodgdon is not at the present time actually consolidated with Macpherson, Egan v. Berman, but as the Motion for Consolidation, still pending, was brought at the time the Amended Complaint was filed, if it is granted, the two cases would be consolidated.

7.      The Court, at a Status Conference on April 9, 2003, did deny the plaintiffs the opportunity to add The Communities Law Center as a party defendant, on the grounds that the Statute of Limitations had already run.

However, the plaintiffs' deny that they were in actuality precluded from adding The Communities' Law Center due to a Statute of Limitations

5

Bar, as the Statute of Limitations under § 52-577 C.G.S.A. as of April 9, 2003

when the Court's Order was entered, <u>had not in fact actually tolled.</u>

At the Status Conference of April 9, 2003, the Court was considering

the defendant Attorney Sally Hodgdon's Objection to the Plaintiffs Motion for

Leave to Amend the Complaint, that Objection in opposition to the plaintiff's

request being dated February 7, 2003, and its accompanying Memorandum of

Law being dated February 25, 2003..

The defendant Attorney Sally Hodgdon's attorney, Attorney Edward

Sheehy, argued in his Objection the following argument:

> " The claim of the plaintiffs to The Communities' Law Center are
> barred by  the applicable Statute of Limitations."
>
> > (Objection of Attorney Sally Hodgdon dated February 7, 2003,
> > page 2, averment #4.)

However, Attorney Edward Sheehy cited no dates or information to

support his contention that the statute of limitations had run, as in fact, his

contention was blatantly false and completely without merit or any legal

foundation to support it.

The Statute of Limitations to be applied was set forth by C.G.S.A.

§ 52-577, which is a three year Statute of Limitations 52-577 provides the

general statute of limitations for tort actions, and applies to actions seeking

damages for intentional torts, and fraud, .also applies to claims of legal

malpractice actions, and establishes a three year statute of limitations for

6

these actions

Attorney Edward Sheehy himself, on behalf of the defendant, Attorney Sally Hodgdon, in his present Motion to Strike (item # 11), cites that very same Statute of Limitations under § 52-577 as being the appropriate Statute to be applied to any claims in this case now before the Court.

Attorney Edward Sheehy, as well as the defendant, Attorney Sally Hodgdon, are well aware that as a matter of law, the statute of limitations does not begin to toll but from the time of the tortious act or acts complained of.

On April 9, 2003, when Attorney Edward Sheehy sat in the Chambers of the Court, and argued that The Communities' Law Center could not be added because any claims as to The Communities Law Center had been tolled by the Statute of Limitations, he argued without any foundation for his argument.

Further, Attorney Edward Sheehy, during that Conference in Chambers, offered no factual support for his argument that the Statute of Limitations had tolled, but remained silent as to any evidence of such tolling, just as he had remained silent as to any facts evidencing a tolling of the statute in his Objection then sitting before the Court and being decided upon that day of April 9, 2003.

In fact, the Statute of Limitations had not tolled.

The defendant, Attorney Sally Hodgdon, while in acting as a lawyer in the scope of her employment to The Communities' Law Center, represented

7

the child plaintiffs Rachel Egan and Loyal Egan right up until May 14, 2002,

only nine months before Attorney Sheeh filed his February 7, 2003 Objection

on the basis of the tolling of Statute of Limitations under § 52-577.

On April 9, 2003, therefore, when the Court, upon Attorney Sheehy's

Motion, made the decision to preclude the plaintiffs from proceeding against

The Communities' Law Center, only eleven months had passed since the

defendant, Attorney Sally Hodgdon, had ceased her representation of the child

plaintiffs, and finally filed her Withdrawal from their case in Superior Court.

Even if one were to go back to the date of the plaintiffs filing of this

Federal lawsuit, on August 16, 2001, the Statute of Limitations was still not

tolled as to any claims the plaintiffs might have had against The Communities'

Law Center, since by April 9, 2003, only one year and a half had passed from

the date of the plaintiffs filing of this suit.

The defendant, Attorney Sally Hogdon's contention therefore, at

the April 9, 2003 Status Conference, was that the Statute of Limitations had

tolled under §52-577 as to The Communities' Law Center, a statute which

allows for a three year time period in which to sue from act or acts complained

of relating to fraud, intentional torts, and legal malpractice , was without

foundation when the defendant Attorney Sally Hodgdon's legal representation

of the child plaintiffs ended only eleven months earlier, on May 14, 2002.

Further, the continuation of the course of the wrongful conduct will

toll the statute of limitations.

The doctrine of Continuing Course of Action, which is applicable in the State of Connecticut to the torts of fiduciaries acting in a continuing course of conduct , renders the Statute of Limitations to not begin to accrue until the last act committed, or when then representation or fiduciary relationship ceases to exist, or acts from it, cease to occur.

The "continuing course of conduct" doctrine applies when the defendant breaches a duty that remains in existence following the commission of the original wrong.  This occurs if a special relationship exists between the plaintiff and the defendant or the defendant later engages in more wrongful conduct related to the prior wrongful act.

The doctrine acknowledges that lawsuits filed between parties in an ongoing relationship are often premature because tortious acts and omissions are difficult to identify and may yet be remedied.

In the present case, the defendant, Attorney Sally Hodgdon, represented the child plaintiffs from March of 1999 through May of 2000, despite the plaintiffs attempts to free themselves of that representation.

Even after the plaintiffs filed this Federal Suit on August 16, 2001, the plaintiff, Hadley Macpherson, and the child plaintiffs, continued to be entwined with the defendant, Attorney Hodgdon for the next six months, in which, while the defendant, Attorney Sally Hodgdon,  knew she was being sued by the plaintiffs, and took active and overt steps to harm them and their interests further.

9

Even after the plaintiffs filed this suit in Federal Court, Attorney Sally Hodgdon had held the plaintiff in contempt for fees she did not owe, and for which there was no Order demanding her to pay them, aided Attorney John Berman in taking her asset without Due Process by the use of ex parte Hearings, met personally and privately with Judge John Caruso ex parte, and blackmailed the plaintiff in the hallway of the Superior Courthouse along with Attorney John Berman in order to get the plaintiff to drop her Appeal filed, as well as committed numerous other acts too numerous to mention, all <u>after</u> the filing of this Federal Case against her by the plaintiffs.

The plaintiff was threatened with jail as a result of those acts, and had had her non-modifiable alimony taken and withheld from her without due process of law, for no legal reason that can be made any legal foundation for.

Attorney Sally Hodgdon was involved in active contention and active litigation with the plaintiffs right up until January of 2002, and was directly in a position to control their persons and properties, all the way until May 14, 2002.

By the time the Status Conference in District Court took place on April 9, 2003 therefore, it could not be legitimately argued or stated that the three year Statute of Limitations, applicable to the events, circumstances, and relationships of the parties in this case, had in any way tolled.

Finally, under the now present known condition of fraudulent non-disclosure and fraudulent concealment, the Statute of Limitations <u>did not in fact</u> begin to toll until the plaintiffs were made aware of their true cause of

10

action against the defendant, Attorney Sally Hodgdon, The Communities'
Law Center, and the other involved parties, until mid 2004, when the
Plaintiffs first began to discover that there was a connection between the
Individuals who are parties or would be parties to this case, a connection not
fully known, understood, or able to be proved until that time.

The exception to the tolling of the Statute of Limitations under
§ 52-577, that being § 52-595 relating to Fraudulent Concealment, which stays
the tolling of the Statute of Limitations when acts of fraudulent disclosure and
fraudulent concealment prevent a party from knowing or ascertaining the true
nature of their cause of action, is applicable in this present situation where the
plaintiffs only recently learned of facts which totally alter the nature of their
claims against the defendant, Attorney Sally Hodgdon, her partner, Attorney
Sue Ann Shay, Attorney Jane Kinney Knotek, The Communities' Law
Center.

Due to the plaintiffs now present allegations and absolute belief that
acts of fraudulent non-disclosure and fraudulent concealment were committed
against the plaintiffs which kept them from knowing or ascertaining the true
cause of their action, the Statute of Limitations did not in fact begin to toll
until the plaintiffs were made aware of, or discovered their true cause of action
against the defendant, Attorney Sally Hogdon, and any other person she was in
collusion with, such as the defendants Attorney Sue Ann Shay or Attorney
Jane Kinney- Knotek, their employer the defendant, The Communities' Law
Center, or the defendants in the other cases until the middle to late 2004.

11

The proposed defendants in this case, Attorney Sally Hodgon et al, had a legal, ethical and fiduciary duty to disclose that the defendant, The Communities' Law Center was a non-profit law firm, and that they were not entitled as a matter of law to take or demand money from the plaintiff that they were not legally entitle to, and that they had a relationships with other parties, people, and defendants, that were both inappropriate, adversed to the plaintiffs interests, and put the defendants Attorney Sally Hodgdon et al, in a position of conflict of interest with the plaintiffs.

The defendant, Attorney Sally Hodgdon et al, further engaged in acts of deceit and dishonesty with the plaintiffs, acts which the plaintiffs now understand more fully, and have more fully discovered through investigation, and in light of now known status of the defendant, the Communities' Law Center, and its relationship to other parties and individuals adverse to the plaintiffs, can only see as much more deliberate and pre-conceived with a planned intent to do harm, than was once thought..

The total of effect of all acts now known of, evidences that the defendant, Attorney Sally Hodgdon, the Communities Law Center, and her partners, Attorney Sue Ann Shay and Attorney Jane Kinney Knotek, never intended to act in a forthright position of honest and trust fiduciary, but at all times was protecting their own best interest at the deliberate and unconscionable expense of the best interests of her two child clients.

The defendant, Attorney Sally Hodgdon, was aware from the moment she took her first act of attorney for the minor children, an act that was

12

deceitful and fraudulent, and an act breaking trust before it was even established, that what she was doing in setting up an inappropriate and illegitimate fee schedule with Attorney John Berman, that she was hiding the true nature of the fees she was legally entitled to.

The defendant, Attorney Hodgdon, when she took all of the other acts against the plaintiffs, at all times knew that what she was doing was hidden, and was undisclosed to the plaintiffs, and that she had a duty as a fiduciary, and as someone employed by the plaintiffs, to act with honesty and not deceit, to guard the plaintiffs interests instead of harm them, and a further duty to disclose the nature of any connections she had with individuals adverse with the plaintiffs that could cause the defendant, Attorney Hodgdon to be in a conflict of interest, or that would jeapordize the plaintiffs interests and privacy.

The defendant, Attorney Sally Hodgdon, from March of 1999 until May of 2002, nor at any time after that, ever disclosed to the plaintiffs the nature of her dishonest acts, the nature of the acts done hidden from the plaintiffs and to the plaintiffs detriment, or the nature of her connections to people and entities directly adverse to the plaintiffs and which connection would bring with it a vulnerability to the plaintiffs and a likelihood that their best interests and privacy would be compromised by the defendant, Attorney Sally Hodgdon, The Communities Law Center and the other individuals involved in those connections.

The defendant, Attorney Sally Hodgdon, as an attorney to the child

13

plaintiffs, Rachel and Loyal Egan, and a fiduciary they were forced to rely on to protect their welfare and interest, had a duty to disclose information detrimental to them, and a failure to disclose, under fraudulent non-disclosure, when a duty to disclose exists, amounts to Fraudulent Concealment.

The defendant, Attorney Sally Hodgdon, allowed the plaintiffs to rely on her, believing in, and relying on, her loyalty as an attorney from the start, as any client, or parent of a client must believe and rely, and then took advantage of that belief and reliance to the plaintiffs detriment from the moment she began her representation of the child plaintiffs, at all three plaintiffs emotional, mental, and financial expense, until the moment the defendant, Attorney Sally Hodgdon, ended that representation.

§52-595 tolls the statute of limitations if the defendant fraudulently conceals the action until the plaintiff first discovers its existence. Fraudulent concealment also applies when the defendant directs his actions to obtain a delay in filing the suit which he later attempt to use to his advantage. .

The defendant, Attorney Sally Hodgdon, knew she was being sued in Federal Court by the plaintiffs, from August 16, 2001, when she was informed By the plaintiffs in open Court at the Superior Court in Hartford Connecticut.

The defendant, Attorney Sally Hodgdon, however, refused to withdraw from representing the child plaintiffs until a full nine months later, on May 14, 2002, to her benefit own , knowing she had control over the plaintiffs lives and was passing the time.

14

Further still, in January of 2002, five months after the defendant, Attorney Sally Hodgdon, learned that she was being sued by the plaintiffs, was, for the first time named as an Officer at The Communities' Law Center, and given the title of Vice President.

To be an officer of a Non-Profit protects an Officer or Director from Liability.

The plaintiffs believe that the defendant, Attorney Sally Hodgdon assumed that role and title deliberately during her continued representation of the plaintiffs from January of 2002 until she Withdrew in May 2002, in order to insulate herself from liability and therefore insulate her employer, The Communities' Law Center from liability.

In 2002, Attorney Sally Hodgdon, was made President of the Communities' Law Center, though it had closed its doors, took no new clients, the other two attorneys, Attorney Sue Ann Shay and Attorney Jane Kinney - Knotek left the firm, leaving the defendant, Attorney Sally Hodgdon, alone with no staff, and supposedly occasionally working out of the nunnery.

Further in 2002, according to the IRS documents, there were twenty four Board Members of the law firm now comprised of only one attorney, and the firm now closing, after just receiving a grant of $75,000, which was never declared to the IRS, made Attorney Hodgdon Vice - President.

Most of the people on the Board were from the Orders which are the Defendants in this suit.

In 2003, Attorney Sally Hodgdon, still knowing she was being suid,

15

and having virtually no clients, and no real office, was now made President of the Communities' Law Center, and now sat alone on that Board with two other people, the Secretary and Treasurer, both from the Orders spoken of.

The holding of office makes no sense, but for the timing of it.

Under the above circumstances, and timing of all of those Circumstances, the plaintiffs contend that under both § 52-577 and § 52-595 there was no legal Statute of Limitation grounds barring the plaintiffs from proceeding on any of their claims against The Communities Law Center, as a Respondeat Superior, back on April 9, 2003, when the plaintiffs sought to do so, and when the Order precluding them from proceeding against the Communities Law Center was issued.

Further, as to whether the Communities Law Center would have had notice of the pending lawsuit under Rule 51, adequate to be able to defend itself, Attorney Edward Sheehy, at that same Chambers Status Conference on April 9, 2003 answered that question himself.

On April 9, 2003, Attorney Edward Sheehy admitted that the Communities' Law Center was constructively served, back when the defendant, Attorney Sally Hodgdon, was given notice of the lawsuit.

Attorney Sheehy ---

"The state of the record then is that, that Ms. Hodgdon was served by and she's a partner of the firm, so I suppose that's constructive knowledge to the firm."

[ Tx. April 9, 2003 Status Conference in Chambers, pg. 23 Line 8 - 11]

16

And later Attorney Sheehy spoke ---

"I think in response to Your Honor's question whether the Communities' Law Center received notice of the institution of this action by the service, alleged service on Sally Hodgdon. As I indicated, I think that probably would constitute constructive notice that we did because she was a partner of the firm."

[Tx  April 9, 2003, pg. 25, line 6-12]

9.    It is true that when the Court asked the plaintiff on April 9, 2003, in Chambers whether the plaintiffs were claiming that any other attorney in the employ of the defendant, The Communities Law Center had harmed them, the plaintiff, Hadley Mapcherson did say "No."

The plaintiffs however, as of April 9, 2003 were still as of yet completely unaware of The Communities' Law Center being a non-profit law firm, of the conflicts of interests of the attorney involved in The Communities' Law Center, the members who sat on Board of the The Communities' Law Center, and their connections with individuals adverse to the plaintiffs.

The plaintiffs did not know that the defendant, and its three "partners", the defendants, Attorney Sally Hodgdon, Attorney Sue Ann Shay, and Attorney Sue Ann Shay were demanding fees from the plaintiff that they were not legally entitled to be charging and demanding, or that the firm, The Communities' Law Center, had a judge of the Superior Court on its Board, as well as a Probate Judge, and multiple attorneys on the board as well, all of which compromised the plaintiffs privacy, confidentiality, and  which compromised the plaintiffs legal interests as to outside individuals and

17

entity's, and rendered the plaintiffs more vulnerable to future harm as well.

The plaintiffs leaned all of their information between the time of late autumn 2003 through the autumn of 2004.

As the defendant, Attorney Sally Hodgdon, is afforded the added presumption that as an Attorney and Officer of the Court she would at all times act within the bounds of the law, and only with truth and fair dealing with her clients, and afforded a similar presumption for her being a nun the plaintiffs could not be convinced of the facts discovered until they proved themselves enough to preclude any other reasonable explanation.

Fraud must be proved with particularity and specificity. The plaintiffs recognized that this was a law firm of lawyers, and nuns, and did not take the responsibility lightly to make sure of the allegations before stating them.

The plaintiffs would not become aware of all of the above issues but throughout the coming year, and a great deal of investigation of matters that they had a legal right to know of, and that the defendant, Attorney Sally Hodgdon, The Communities' Law Center, and her associates, Attorneys Sue Ann Shay and Attorney Jane Kinney Knotek had a duty to disclose, which non-disclosure of, and concealment of, wrought harm to the plaintiff both financial, emotional, mental.

The plaintiff's statement of "No" was a statement made against interest, as had the plaintiff known at the Status Conference on April 9, 2004, of any wrongdoing on the part of The Communities' Law Center , on the part of Attorney Sue Ann Shay and Attorney Jane Kinney - Knotek, or as to any of

18

their inappropriate connections, conflicts of interest, adverse interests, and fraudulent billing practices, the plaintiff would obviously have said "Yes" instead of "No", in order to be granted the hope of obtaining relief against them for the wrongs they committed .

Further, the plaintiffs would have immediately argued if they had known what they know now, that the entire representation of the child plaintiffs had been of a dishonest nature from the very start, that it involved a compromised situation with the defendant, Attorney John Berman, and the judges of the Superior Court.

The plaintiffs, had they had the such an argument to ward off The Communities' Law Center being released from liability, would have used it.

The plaintiff stated in the transcript of the April 2, 2003 Status Conference, that she only just learned that the Communities Law Center was a firm owned by four Orders of Catholic Nuns, those same Orders now served as defendants in this case.

The plaintiffs statement of "No." then can be only be seen as indicative of truth, and that on April 9, 2003 the plaintiffs were completely ignorant of the non-profit nature of the Communities Law Center,  the outside persons and entities involved with the Communities Law Center , or the acts that had arisen out of those connections for which the plaintiffs ought to be able to seek relief, and are now attempting to seek relief.

The plaintiff, as of April 9, 2003, had only heard that someone had seen something on the internet regarding the Communities Law Center and

19

that it was founded by the four Orders.

The plaintiff was not as of yet in possession of any documents that Would indicate to her that the firm was a non- profit, that it had cheated the plaintiffs in seeking and taking illegitimate fees, that it had exercised a relationship with other individuals that were adverse to the plaintiffs and that would compromise the loyalty of the Communities Law Center to the plaintiffs interest.

The plaintiffs did not learn of that information until the late autumn of 2003 through the autumn of 2004, once the plaintiffs had acquired the IRS filings of the firm, learned of the people sitting on its Board of Directors, read its Application for Non-Profit Status, attempted to acquire the DCF documents from the State of Connecticut, acquired the DCF documents from the State of Pennsylvania, and spoken with other individuals who now offered information that clearly evidenced that a series of disloyal and compromised acts had been engaged in at the plaintiffs expense by the defendant, Attorney Sally Hodgdon, and the Communities Law Center , and Attorney Sue Ann Shay and Attorney Jane Kinney Knotek, as the only other attorneys at the firm, and who reaped benefit from the acts committed.

10.    As to 15( c ) (1):

The defendant, Attorney Sue Ann Shay and the defendant, Attorney Jane Kinney - Knotek, had constructive notice of this lawsuit from the time it first began on August 16, 2001.

The defendant, Attorney Sue Ann shay and the defendants, Attorney Jane Kiney-Knotek had received constructive notice at the time that the defendant, Attorney Sally Hodgdon April 15, 2002, when the Summons and Compliant was served at the offices of The Communities Law Center.

Attorney Edward Sheehy admitted on April 9, 2003, on page 23, line 5-11, referred to above, that the Communities Law Center had Constructive notice when Attorney Sally Hodgdon received notification of the lawsuit.

Attorney Sally Hodgdon was first notified of the lawsuit in open court, at Superior Court, on the record, on August 16, 2001 on the day the suit was filed.

Four days later, on August 22, 2001, Attorney Hodgdon phoned the plaintiff in Pennsylvania and asked her to drop the lawsuit telling the plaintiff that she and her "partners", had talked it over, and that they agreed to waive their fees which the defendant, Attorney Sally Hodgdon, had just had the plaintiff held in Contempt for, and waive the plaintiffs debt, in return for the plaintiff dropping this lawsuit.

Therefore, the defendant, Attorney Sue Ann Shay and the defendant, Attorney Jane Kinney Knotek, were constructively noticed back in August of 2001 of the nature of this lawsuit, and of it having been filed against the defendant, Attorney Sally Hodgdon, and would have had to anticipate that the plaintiff would seek to join the Communities Law Center, and them also, as defendants, particularly once the plaintiff would learn of the firms illegal billing practices.

21

The defendant, Attorney Sue Ann Shay was actually the first attorney employed by the firm, and the person listed on the Communities Law Center Application for Recognition of Exemption under 501( c ) (3), a form that deliniated what the billing practices were supposed to have been in order for the firm to maintain its Non-Profit Status.

The defendant, Attorney Sue Ann Shay, the defendant Jane Kinney - Knotek, the defendant, Attorney Sally Hodgdon are all attorneys, and must have anticipated, in their understanding of lawsuits and discovery, that the plaintiffs would learn they had been cheated from the beginning, and that any actual fiduciary relationship was destroyed from the moment the defendant, Attorney Sally Hodgdon, set up her illegitmate agreement for fees with the defendant, Attorney John Berman in March of 1999.

Further, Since, Attorney Hodgdon was told in open court, on August 16, 2001 that she was being sued, and then took on the role of Vice President of the firm in January 2002, the Communities Law Center had constructive notice of the law suit on August 16, 2001 also.

Further still, Attorney Sally Hogdon, was served at the offices of the Communities' Law Center because her place of abode at that time was unknown, in that she was a nun living in a nunnery whose location was unknown at the time.

Attorney Sally Hodgdon, in her own Affidavit filed on May 7, 2002, when contesting the timeliness of the service of the Summons and Compliant that took place on April 15, 2002, at the location of the firm The

Communities' Law Center, claimed that nineteen people, including staff,

attorneys, and clients, in the three days preceding April 18, 2002 who went in

and out of her firm, had never seen the envelope that had been served under

the door of the Communities Law Center three days earlier on April 15, 2003,

until it magically appeared leaning up outside the door of the offices on April

18, 2002 three days later.

At the time the defendant, Attorney Sally Hodgdon,  filed that

Affidavit on May 7, 2002, in support of her Motion to Dismiss filed that same

day of May 7, 2002, she had only a staff of  two attorneys, Attorney Jane

Kinney-Knotek and Attorney Sue Ann Shay,  and one paralegal, Linda Pepe,

who also filed an her own Affidavit on May 7, 2002, swearing that she too

never saw the  Summons and Complaint in the offices of the Communities

Law Center until April 18, 2002.

Those Affidavits filed by both the defendant, Attorney Sally Hodgdon,

and her paralegal Linda Pepe, indicate, and swear, that discussion must have

taken place with all the individuals that the defendant, Attorney Sally

Hodgdon, was purporting to swear had not seen the Summons and Complaint,

until it appeared outside of the law office door on April 18, 2002, a supposed

three days past the deadline for service.

Therefore, the defendant, Attorney Sally Hodgdon, unless she was

untruthful in her May 7, 2002 Affidavit when she swore that she spoke to

every one at the Communities Law Center,  must have spoken to the

defendant, Attorney Attorney Sue Ann Shay, and the defendant, Attorney Jane

23

Kinney Knotek about the Summons and Complaint filed by the plaintiffs at that time, and would have enlightened them, as the then "Vice President" of the suit being brought against them, as they would have an interest in that information, and she would have a duty to tell them.

Lastly, as Attorney Sally Hodgdon, was Vice President of The Communities Law Center in 2002, an office which implies constructive notice at that time on the defendant, The Communities' Law Center, and a notice undisputed by Attorney Edward Sheehy on April 9, 2003, that same notice under the defendant, Attorney Sally Hodgdon's authority and agency at that time over the two as of yet un-served defendant attorneys, Attorney Jane Kinney and Attorney Sue Ann Shay is impliedly to have taken place constructively as well.

Further, the plaintiff has now come to know that there are no actual legal "partners" at the law firm of the Communities Law Center, atleast not in the legal or traditional sense.

The Communities Law Center is not an actual Partnership, formed as a legal entity under any formal "Partnership".

The defendant, Attorney Sue Ann shay and Attorney Jane Kinney - Knotek are therefore not "partners" of the law firm, at least are not "partners" under the law, as they do not have the normal legal obligations to each other or associated liability that comes with a legal "partnership".

In fact, the word "partner" is yet to be defined when it comes to the employees of the Communities Law Center given the fact that Linda Pepe, the

24

firm's Paralegal, signed the firm's 2002 IRS 990 Form as "Linda Pepe" and deemed herself a " Partner" by writing the word "Partner" next to her signature on those IRS 990 Forms, swearing to her having examined them and found them to be accurate and truthful.

Even if Linda Pepe, the Communities Law Center's paralegal, has in fact obtained her law degree after being the paralegal at the Communities Law Center for roughly eight years, it is difficult to see how she became a "partner" in 2003, in a law firm that takes no clients, has no office, and is not in fact operational except in its asking for grants.

As President of the Communities Law Center the defendant, Attorney Sally Hodgdon, does have agency to accept service for employees who, like herself, are not actual "partners" of the law firm.

Therefore, the plaintiffs attempt at Service of the Amended Complaint dated March 15, 2005, on the President of the Communities Law Center , Attorney Sally Hodgdon, this past March 30, 2005, for the two employees Attorney Sue Ann Shay and Attorney Jane Kinney Knotedk, and which was refused by the defendant, Attorney Sally Hodgdon, was in fact legitimate service, and should have been accepted by the defendant, Attorney Sally Hodgdon.

The defendant, Attorney Sally Hodgdon's refusal to accept service for mere employees who are not actual "partners" was an illegitimate refusal when she is the active President of the Communities Law Center, and the firm has not been formally dissolved, is still filing its financials every year, and still

25

applying for grants as if its doors are open and operational.

Constructive service of the Amended Complaint on March 30, 2005 on the defendant, Attorney Sue Ann Shay and Attorney Jane Kinney - Knotek was made, particularly since the defendant, Attorney Sally Hodgdon, spoke to Attorney Jane - Kinney Knotek that very day, and particularly since the plaintiffs are suing the defendant Attorney Sue Ann Shay and Attorney Jane Kinney - Knotek, in their capacities as attorneys for the firm, and not as to them personally for matters unconnected to the operatin of the firm.

## As to 15 ( c ) (2):

The issue of fraudulent non-disclosure and fraudulent concealment relates to Attorney Sue Ann Shay and Attorney Jane Kinney-Knotek in the same manner that it related to the defendant, Attorney Sally Hodgdon, and the Communities Law Center.

The defendants, Attorney Sue Ann Shay and Jane Kinney - Knotek were involved in a joint venture with the defendant, Attorney Sally Hodgdon, and the Communities Law Center, a joint venture, that in its operational effect, atleast as regards the plaintiffs, entered into a dishonest fiduciary relationship with its clients, and knowingly did so from the start.

All other subsequent acts committed could not have been with loyalty, given the initial deciet, and ongoing deciet committed, and the professional understanding of the defendant, Attorney Sue Ann Shay and Attorney Jane

Kinney - Knotek of the law, and of non-profit law, and of the rules governing the management and confines of a non-profit organization.

The defendant, Attorney Sue Ann Shay herself, while running the Communities Law Center alone,  before the defendant, Attorney Sally Hodgdon, was employed by the Communities Law Center, sat on the nine member Board of the Hartford Foundation for Public Giving for nine years, from 1987 - 1996, a board whose sole duty was to make the ultimate decision on every grant application that was to be considered by the Hartford Foundation for Public Giving during those years.

The defendant, Attorney Sue Ann Shay, and the defendant, Jane Kinney Knotek knew the plaintiffs personally, and in such a small office, no larger than 500 square feet, were not so removed from the plaintiffs, or the defendant, Attorney Sally Hodgdon, or the daily decisions involved in the management of the Communities Law Center to not bear responsibility, or to not have known when this lawsuit began, that they might bear some of the responsibility when all facts came to light.


As to 15 ( c ) (3):


The bringing in of the defendants, Attorney Sue Ann Shay and Attorney Jane Kinney Knotek will not in any way prejudice those defendants.

There has been no discovery performed in either this case of 3:01 CV01555 or the case of 3:02CV1309.

There have been no Requests for Admissions sent to the plaintiffs by any defendant, or any attorney for the defendants in either of the two cases before this Court.

There have been no Interrogatories sent to the plaintiffs by any defendant, or any attorney for the defendants in either of the two cases before this Court..

There have been no Depositions held, and no request even made for a Deposition to be held by any defendant, or any attorney for the defendants in the two cases before this Court.

The plaintiffs themselves have never mailed any requests for Admissions, never mailed any Interrogatories to any of the defendants, or any of the attorneys for the defendants in these two cases before the Court.

The plaintiffs have never attempted to depose a single witness or party in either of the two cases now before this Court.

Attorney Edward Sheehy's filings in this case have consisted of A Motion to Dismiss based on untimely Service, a Motion for Transfer and Consolidation, an Objection to the plaintiff wanting to Amend her Complaint to include the Communities Law Center, a Motion to Strike the Communities Law Center, and an Objection to Consolidation, none of which had anything to do with the actual substance of the claims made against any of the defendants in either of the two cases before the Court.

The firm of Robinson & Cole, and its attorneys representing the defendants in the case of #3:02CV1309 have only filed for Extensions of

28

Time, and an Objection to Consolidation, neither of which ever had anything to do with the actual substance of the claims made against any of the defendants in either of the two cases before the Court.

Therefore, as there have been no stipulations, no matters decided, no evidence attempted to be brought forth and denied entry which could harm any defendant, or any defendants defense, and due to the fact that virtually almost all information regarding the defendants, and any defense they could make, is in the possession of the defendants themselves, any of the newly added defendants could not be prejudiced by entering the case at this time.

There has been no discovery. There has been no Trial date set.

There has been nothing lost, and not even any active or full litigation done by any party in either of the two cases.

The defendant, Attorney Jane Kinney Knotek and the defendant Attorney Sue Ann Shay have missed nothing, because nothing has been begun, and therefore, they have lost nothing in coming in at a later date.

Lastly, the plaintiffs have no desire to hold numerous depositions, and are ready to go to Trial as soon as the defendants in the two cases are ready.

11.     Claims against Attorneys Shay and Kinney-Knotek are not barred by the three year Statute of Limitations set forth by § 52-577 C.G.S.

As argued above, the Statute of Limitations begins to toll at the time of the last bad act under the continuous course of action doctrine.

29

The defendant, Attorney Sally Hodgdon, did not file her Withdrawal From representation of the child plaintiffs, Rachel Egan and Loyal Egan, until May 6, 2002, and was not released from her representation of the child plaintiffs until May 14, 2002.

Further, as the defendant, Attorney Sally Hodgdon, relationship was a fiduciary relationship, her actions did not cease to harm the plaintiffs on the date of her Withdrawal, particularly when she continued to act in collusion with the defendant, Attorney John Berman, and the defendant Paul Egan, to harm the plaintiffs after that time, and her previous acts had residual effects of later harm.

Finally under § 52-595 the Statute of Limitations is tolled if a defendant commits acts of Fraudulent Non-disclosure or Fraudulent Concealment that prohibits or delays the plaintiffs from knowing or ascertaining the true cause of their action or the claims they are entitle to seek relief for.

§ 52-595 is Operational particulary when the defendant had a special duty to disclose and chose not to, but instead induced reliance and belief on the part of the plaintiffs that then later caused the plaintiffs, as a result of their belief and reliance on the defendants non-disclosure and concealment, to suffer harm.

The defendant, Attorney Sally Hodgdon, as a fiduciary, had a special duty, as well did the other attorneys at the Communities Law Center, and the Communities Law Center itself.

30

All employees of the Communities Law Center reaped financial benefit from the acts committed against the plaintiffs, and they should be held accountable for whatever portion of the deceit and acts that followed can be attributed to them..

If the statute of limitations is not tolled to the action, it is not tolled to any defendant who may have had a hand in the acts committed which form the basis of that action.

13.    The plaintiffs believe that the facts alleged in their Original Complaint, form the elements of a claim for Breach of Fiduciary Duty, whose elements would be proved in the proving of the other claims, as an attorney could not commit the acts complained of without Breaching his Fiduciary Duty, and that the plaintiffs omission of the words "Breach of Fiduciary Duty" do not mean that the plaintiffs were not making that claim intrinsically within their other claims.

14.    The defendant, Attorney Sally Hodgdon, fails to state any legitimate way in which her rights are prejudiced in this case.  She has lost nothing as of yet.

There has been no discovery on the part of any party in either case.

There has been no requests for Admissions, and no Interrogatoreis Sent or answered in either of the two cases.

There have been depositions in either of the two cases.

31

There have been no stipulations made by any party in either of the two cases.

There have been no negotiations between any party in either of the two cases, and no contact other than procedural contact .

All information necessary for a defense is still readily accessible, as virtually all documentation necessary for a defense is in the hands of the defendants in both of the two cases.

The plaintiffs are ready to go to Trial as soon as the defendants would like, and have no need for extensive Discovery.

The plaintiffs filed their Amended Complaint with the particularity and specificity they did, to ensure that the defendants were made fully aware of the allegations against them.

The plaintiffs can be more specific and allege again, with greater specificity because the plaintiffs are in possession of their facts needed to make their case, are not fishing.

Should any defendant in either of the two cases request a More Definite Statement the plaintiffs are able to make a more definite statement, and only failed in the portions they did due to the enormity of the allegations needed to be made against the defendants in the two cases, and the difficulty of doing so within the rules of particularity and specificity without making the Complaint 400 pages long.

If the defendant, Attorney Sally Hodgdon, or any of the other defendants feel prejudiced by not enough information to defend themselves

32

the plaintiffs can allege more fully.

Finally, it was the plaintiff who have suffered a loss to their rights in this case.

On April 9, 2003, the defendant, Attorney Sally Hodgdon, still had not filed an Answer, Counter Claim, or Cross Claim, and as such the plaintiffs still had the opportunity to Amend once as a matter of Right and include any new claims, and add any new parties to their Complaint, without opposition by the opposing counsel.

Attorney Sheehy Motion had been based on the contention that the plaintiffs owed him a copy of their Amended Complaint before they filed it, when that was not the case. The defendant Attorny Sally Hoddndon had not submitted a Responsive pleading yet, and as such , the plaintiff was free to Amend their Complaint without interference.

At the April 9, 2005, Status Conference, only after the issue of Statute of Limitations as it pertained to the adding of the Communities Law Center as a defendant, and concluded in the defendant's favor, that the Court realized that the defendant, though filing an Objection to the plaintiffs desire to Amend, had never filed an Answer, Counter Claim or Cross claim, and that the plaintiff was free to Amend as she like.

However, the preclusion as to The Communities Law Center remained standing solely on the basis of the Statute of Limitations having tolled, a tolling which in fact under the circumstances and events peculiar to this case, which was not actually true.

33

Attorney Edward Sheehy had a duty to inform the court of any controlling law on the issue of Statute of Limitations as it applied to this case, and his client the defendant, Attorney Sally Hodgdon,  as well as not to make a baseless and frivolous argument in order to unfairly insulate his client, and her employer, the Communities Law Center, from liability, an insulation they were not entitled to by law at the time the insulation was afforded to them..

Further, during the Hearing in Chambers on April 9, 2003, Attorney Edward Sheehy had a further obligation to apprise the Court and the plaintiff of the true nature of The Communities Law Center, and the relationship of its employees when asked to do so by the Court.

Instead, Attorney Edward Sheehy perpetuated the misrepresentation already ongoing, that the Communities Law Center was a Partnership, with attorneys who were actual "partners".

The plaintiff, during the Hearing stated that the defendant, Attorney Sally Hodgdon was a partner of her firm, and founding partner.

Attorney Edward Sheehy made no move to dispute that statement or correct it, even when the Court asked him to directly verify the plaintiff's statement.

In fact, when the Court asked Attorney Edward Sheehy if Attorney Hodgdon was a partner of the Communities Law Center , Attorney Edward Sheehy said that she was.  Twice Attorney Sheehy made that statement.

First, Attorney Sheehy made that statement when addressing the issue of relation back, and whether the plaintiffs could bring in the Communities

34

Law Center as a defendant based on Rule 15 ( c ) ---

The Court:   Okay.  Mr. Sheehy, focusing on the question of relaiton back?

Mr. Sheehy:   Well, I set forth our position in our Memorandum of Law dated February 25, 2003, and keeping in mind that Mrs. Hodgdon was appionted y the Court to be the attorney and guardian for these two young children ---

Ms. Macpherson:   Not until three years further fro the one -- just the one.

Mr. Sheehy:   Excuse me she was appointed by the court to be attorney and guardian ad litem for these children and it seems to me clear that any claim against the communities law center is barred by the statute of limitations.  The Communities law center was not appointed to be guardian for the minor children.

The Court:   But she was at all times a partner in the firm?

Mr. Sheehy:   As far as I know, yes.

Ms. Macphreson:   Founding partner.  And there is one other thin I didn't know of the existence of the four other attorneys until just two weeks ago.  That's not something they announce.

(*the plaintiff meant the four nun orders not "attorneys"*)

[ Tx. April 9, 2003 Conference pg. 18, line 13 thru pg. 19 line 8]

And later --

Mr. Sheehy:   The state of the record then is that, that Ms. Hodgeon was served by and she's a partner of oteh firm, so I suppose that's constructive knowledge as to the firm.

However, Attorney Edward Sheehy, knew full well that Attorney Sally

Hodgdon, was not a partner in the law firm known as The Communities' Law

35

Center.

There are no partners at The Communities Law Center.

Attorney Edward Sheehy cannot be presumed to have so little knowledge of the law firm who is his client, and by April 9, 2003, had been his client for over a year.

On April 9, 2003, the plaintiffs still believed they had been represented by a regular law firm, a "for profit" entity, not dependent on favors of others, and not intruded upon or jeapordized by connections from outside individuals.

On April 9, 2003, Attorney Edward Sheehy, though having represented The Communities Law Center for over a year, and knowing full well that tit was a Non-profit law firm with no partners, did nothing to dispel that illusion, and in fact, fed that illusion to both the Court and the plaintiff with his false statement made in response to the Court's query.

Had Attorney Sheehy been forthcoming on April 9, 2003, and stated that there were no partners at The Communities' Law Center, and that it was a non-profit entity, the plaintiff would have immediately understood that there might be more to the situation than she had previously surmised.

Attorney Edward Sheehy had a duty to be forthcoming as to the actual statute of limitations, and the actual employment status of his client.

The plaintiff, a pro se, can be blamed for being stupid, in thinking that the Court, when asking her the following question, was referring to service.

THE COURT:  Yes, the Community Law Center, you would have
                 to show --- because I take it you would agree that the
                 statute of limitations as to that entity has run?

36

MS. MACPHERSON:   Right, I didn't realize that at the time.  My mistake.

[Tx. April 9, 2003 Conference pg. 14,  line 10 - 15]


However, regardless of the plaintiffs stupidity at the question, the plaintiffs had a legal right to Amend their Complaint once as a matter of right, and to make that amendment without opposition or scrutiny, a right they lost without a legal foundation for the losing of it.

Attorney Edward Sheehy received a judgment based on erroneous fact.

The plaintiffs had a legal right to pursue the Communities Law Center as Respondeat Superior, for the acts of its employee, the defendant, Attorney Sally Hodgdon, committed while acting in the scope of her employment..

The fact that the plaintiffs were to find out a full year later that the Communities Law Center  itself had harmed their rights and interests only raised further unfairness to their having being precluded from seeking relief for those wrongs.

37

Respectfully Submitted,

_____
Rachel Egan

_____
Loyal Egan

_____
Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC   28270
(704)  675 - 5252

# **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this day of April 30, 2005, to the defendant, The Communities' Law Center at 27 Park Road, West Hartford, CT, 06119 ; the defendant the Sisters of Notre Dame at 468 Poquonock Avenue, Windsor, CT 06095; the defendant the Daughters of the Holy Spirit at 72 Church Street, Putnam CT 06260 ; to Attorney Edward Sheehy at Williams, Cooney & Sheehy at 799 Silver Lane 06611 appearing for the defendant Attorney Sally Hodgdon ; and to Attorney Louis Blumenfeld at Cooney, Scully, & Dowling, at 10 Columbus Blvd., Hartford, CT 06106 appearing for the defendant the Sisters of Saint (St.) Josesph and the defendant the Sisters of Mercy.

Rachel Egan

Loyal Egan

Plaintiff Pro Se

Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC   28270
(704)  675 - 5252