COPY

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x

HADLEY MACPHERSON, ET AL           :   No. 3:01CV-1555 (SRU)
                                   :   915 Lafayette Boulevard
              vs.                  :   Bridgeport, Connecticut
                                   :
                                   :   April 9, 2003
SALLY HODGEDON, ET AL              :

- - - - - - - - - - - - - - - x


STATUS CONFERENCE


B E F O R E:

        THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.



A P P E A R A N C E S:

    FOR THE PLAINTIFF:

                HADLEY MACPHERSON, Pro Se
                RACHEL J. EGAN, Pro Se
                LOYAL B. EGAN, Pro Se
                P. O. Box 501
                Lahaska, Pennsylvania  18931


    FOR THE DEFENDANT:

                WILLIAMS, COONEY & SHEEHY
                    799 Silver Lane
                    Trumbull, Connecticut  06611
                BY: EDWARD M. SHEEHY, ESQ.


                Susan E. Catucci, RMR
                Official Court Reporter
                915 Lafayette Boulevard
                Bridgeport, Connecticut  06604
                Tel: (203) 246-6385

1    discovery, he would be across this table and Sally's
2    questions, because we are alleging emotional damage,
3    Sally's questions to these two children about what took
4    place is going to be about their father, about her
5    relationship with them and he's sitting there and I don't
6    feel that that's fair to them.
7         THE COURT:  Well, for all those reasons, and the
8    ones that I mentioned, I'm going to deny without prejudice
9    the motion to consolidate.  If it turns out that there's
10   later developments in the case that makes sense to bring
11   them together, we can always --
12        MR. SHEEHY:  Let me just say in response to what
13   Ms. Macpherson said, that her claim against Attorney
14   Berman is that he withheld from the court financial
15   information concerning her former husband, and her claim
16   against Attorney Hodgedon is that she failed to take a
17   deposition of her husband to find out what his financial
18   situation was, so I think they are interrelated in that
19   sense.
20        MS. MACPHERSON:  That's not a claim that was
21   made.
22        MR. SHEEHY:  Well, it's in the papers that you
23   filed.
24        THE COURT:  Even if there is some overlap, I
25   think under all of the circumstances consolidation isn't

1   one in my view is the aspect of the motion that seeks to

2   add a party and that has a relatively significant argument

3   opposing the motion and I want to give the plaintiffs a

4   chance to argue it.

5           I don't know if you fully understand the nature

6   of the opposition but, in essence, it is that in order to

7   avoid a Statute of Limitation bar to the claim against,

8   what is it, Community --

9           MS. MACPHERSON:  Community Law Center.

10          THE COURT:  Yes, the Community Law Center, you

11  would have to show -- because I take it you would agree

12  that the time for the Statute of Limitations as to that

13  entity has run?

14          MS. MACPHERSON:  Right, I didn't realize that at

15  the time.  My mistake.

16          THE COURT:  So the argument is because the

17  Statute of Limitations has otherwise run, unless you can

18  demonstrate that that claim relates back, meaning it is

19  one that should be treated as having been brought in

20  effect at the same same time as your claim against

21  Hodgedon, then to permit the amendment would be futile

22  because it would simply be dismissed or summary judgment

23  would be granted on Statute of Limitation grounds.  And in

24  connection with that, I wanted to understand perhaps a

25  little better why you think you want to sue that entity.

1    The impression I had from your papers is you were
2    concerned about whether or not there would be malpractice
3    insurance available to cover the claims against Attorney
4    Hodgedon.  Is that part of your concern?
5         MS. MACPHERSON:  At the present time, because
6    that's the only thing I don't know in the case, is what
7    anybody's malpractice insurance is, I don't know how it
8    works at Sally's firm -- I'm sorry, Attorney Hodgedon's
9    firm.  Attorney Hodgedon's firm is unusual and I only just
10   learned recently that actually there is someone, there is
11   another party that owns the firm beyond the Community Law
12   Center, so there is somebody who owns the Community Law
13   Center, actually four different parties who own it and,
14   again, it was merely because I didn't understand the law,
15   which is not anybody's fault but my own, that I didn't
16   understand that when we, when I named her originally that
17   I wasn't naming them.  She's a full partner, she's a
18   founding partner in the firm.  I saw it all as her.  They
19   are all nuns there and it's a nun firm and they are owned
20   by nuns, and it's a small firm but it's jointly owned by
21   four other entities and everything that took place, every
22   phone call, everything that's being alleged in the
23   amendment and the meeting between Attorney Hodgedon and my
24   daughter is that alleged in there, as far as what Attorney
25   Hodgedon did in the course of, was done in the conference

 1   room.  Every meeting we ever had was in the office of the

 2   Community Law Center.  Every bill that Sally ever sent

 3   was, had a Community Law Center name on it.  Sally's card

 4   has Community Law Center.  Every phone call ever sent was

 5   with Community Law Center on it.  She acted as their

 6   agent, she's a founding partner, and technically she

 7   represents them.  She acted in, the scope of her

 8   employment, the actions she took against the children were

 9   in the scope of her employment, and in my mind it was my

10   understanding that that makes her, these transactions

11   makes respondeat superior.

12          I guess the thing is I don't see this as an

13   individual.  I guess I don't feel she acted in a renegade

14   manner, she acted with her firm, and the other ones were

15   there when we were there and were present and I guess I

16   certainly would have put the name, had I not understood,

17   had I misunderstood -- had I not misunderstood that they

18   weren't, that it wasn't adequate just to put her name, I

19   would have from the very beginning.

20          The actions that are alleged against her and the

21   actions alleged against Community Law Center all are the

22   same actions and took place at the same time, at the exact

23   same time frame, everything was at the same time, what

24   happened.

25          THE COURT:  Your only claim, we don't have the

1    proposed complaint and so it's a little unclear still

2    exactly what your claim against Community Law Center would

3    be, but my understanding is that your claim for that

4    entity's liability is based exclusively on the actions of

5    Attorney Hodgedon?

6                MS. MACPHERSON:  They received my money, the

7    Community Law Center received my money for representation.

8                THE COURT:  Right, but in terms of any

9    wrongdoing, no one other than Hodgedon is alleged to have

10   done anything wrong, is that right?

11               MS. MACPHERSON:  You mean any other person,

12   individual, actual person?

13               THE COURT:  At the firm, right.

14               MS. MACPHERSON:  I guess I feel that they are

15   responsible.  She's the lead partner, she's --

16               THE COURT:  Well, I'm not suggesting that they

17   are not.  I just want to make sure that the wrongdoing

18   that you're claiming is wrongdoing that Sally Hodgedon

19   allegedly did.

20               MS. MACPHERSON:  Personally did, yes.

21               THE COURT:  And you're in effect claiming that

22   because she's a partner, her firm is also liable for her

23   actions?

24               MS. MACPHERSON:  Right.

25               THE COURT:  But you're not claiming there was

1    somebody else who also did some wrongdoing?

2            MS. MACPHERSON:   No.

3            THE COURT:   That's what I'm trying to figure

4    out.   Okay.   All right, well --

5            MS. MACPHERSON:   I'm really saying they had a

6    duty, any of them, they all knew what was going on because

7    it's a very small firm.   The number you call, you speak to

8    the other ones, they all knew what was going on.   None of

9    that was hidden.   So in my mind they had a duty and she is

10   the lead partner of the firm and founding partner and it

11   was a mistake and I understand the Statute of Limitations

12   bars it, but --

13           THE COURT:   Okay.   Mr. Sheehy, focusing on the

14   question of relation back?

15           MR. SHEEHY:   Well, I set forth our position in

16   our Memorandum of Law dated February 25, 2003, and keeping

17   in mind that Ms. Hodgedon was appointed by the court to be

18   the attorney and guardian for these two young children --

19           MS. MACPHERSON:   Not until three years further

20   for the one -- just the one.

21           MR. SHEEHY:   Excuse me, she was appointed by the

22   court to be attorney and guardian ad litem for these

23   children and it seems to me clear that any claim against

24   the Community Law Center is barred by the Statute of

25   Limitation.   The Community Law Center was not appointed to

bounds that they shouldn't have.

And the fact that I end up finding out that they are actually owned by other religious groups, the Community Law Center is -- I guess what I'm saying is you can't -- in my mind I can't separate her from the fact that that's a nun firm, that she acted an as nun rather than as attorney, and the fact that it is a nun firm and she's a founding partner with four other nuns in that firm. They joined to found that firm as part of their religious thing. We had no choice in that, did not know of that when she was appointed.

And just to set the record straight, she was not guardian ad litem for both children and was only appointed guardian for this child, Loyal Egan, one year ago, a year and-a-half ago. So she was not guardian ad litem. Thank you.

THE COURT: Okay, well, the issues that you're just raising now, you know, I think are going to be barred by the Statute of Limitations because they haven't been raised yet and the question is whether any claims that you want to raise against the firm or -- in effect should relate back. These are new onces that can't relate back to claims you've already made because you haven't made these claims, so legally you can't amend your complaint to raise the concerns that you just mentioned because those

1   would be barred by the Statute of Limitation.

2           MS. MACPHERSON:  But I mean the thing --

3           THE COURT:  Excuse me?

4           MS. MACPHERSON:  No, I mean in the amendment of

5   the original complaint that she attempted to coerce Loyal

6   Egan using religion.

7           THE COURT:  Yes.

8           MS. MACPHERSON:  So that -- that is not new --

9           THE COURT:  No, that's not new as to Attorney

10  Hodgedon, but to complain about the firm being a nun firm

11  or acting inappropriately in some way other than what was

12  already in your --

13          MS. MACPHERSON:  I see, okay.

14          THE COURT:  That doesn't relate back.  To

15  relate back, it has to be related to something that you've

16  already claimed in a stronger sense than -- I know that

17  you've raised the issue of her use of religion but you

18  haven't raised concerns about her being part of a firm

19  that was religious-based or owned by a religious entity

20  or, you know, acting as a group of nuns rather than as a

21  group of lawyers.  Those claims weren't brought.

22          MS. MACPHERSON:  I see.  By saying they acted as

23  a group of nuns, meaning I can still make that claim

24  against her but I can't make it against them because it

25  wasn't in the original complaint?

THE COURT:  Well, the other, I guess, related point -- and this is going back to what's in your papers, my impression was that you were concerned to sue the firm primarily to get malpractice insurance coverage and I don't know what the, if there is a policy in this case or what it provides, but you should be aware that it's not at all unusual for firms to purchase policies covering their employees and/or their partners.

MS. MACPHERSON:  So whether they are sued or not doesn't make any difference?

THE COURT:  It my not -- if your concern is collection of any judgment you may obtain, it may or may not be something that you need to worry about.  So I'm going to deny the motion to amend to the extent that it seeks to add another party.

I'm going to grant it -- well, actually I'm not going to grant it.  What I'm going to do is suggest this: I'm going to ask you to refile your Motion to Amend. Doesn't have to be lengthy, it can just be a short motion to amend, and attach the proposed amended complaint, because you did suggest some other changes you wanted to make, and then bring in other paragraphs and so forth if you still want to make these changes.

MS. MACPHERSON:  Right.  All I did with the amendment, it's all numbered paragraphs, it's all done in

1    the proper format so they can aver properly.  What I did

2    was be specific about the allegations.  That was the only

3    difference.  They are not new allegations, at least to me.

4            THE COURT:  Right.

5            MS. MACPHERSON:  And even as far as the --

6            THE COURT:  I'm just going to suggest that you

7    do this:  I'm going to deny your Motion to Amend in all

8    other respects; that is, other than adding a party,

9    without prejudice and ask you to refile it.

10           MS. MACPHERSON:  Okay.

11           THE COURT:  Just very brief form.

12           MS. MACPHERSON:  Refile the motion, right.

13           THE COURT:  You know what?  Take that back.

14    There is no answer yet.

15           MR. SHEEHY:  Correct.

16           MS. MACPHERSON:  That's right.

17           THE COURT:  And have you amended your complaint

18    yet?

19           MS. MACPHERSON:  I didn't bring it in --

20           THE COURT:  You haven't filed an amended

21    complaint before?

22           MS. MACPHERSON:  No, I did not, ever.

23           THE COURT:  You have a right, as a right you can

24    amend your complaint once until an answer is filed, so you

25    can file your amended complaint --

1          MS. MACPHERSON:   Okay.

2          THE COURT:   -- making those changes other than

3    adding a party.

4          MS. MACPHERSON:   Okay, and the supplement, can

5    it be part, can I have an amended and supplemented

6    complaint as one document or do you want the two

7    documents, my request to supplement?  It was one

8    representation continuous that she had past August 16.

9          THE COURT:   What you need to do is file whatever

10   complaint it is you want against Sally Hodgedon.

11         MS. MACPHERSON:   But I'm barred after August 16

12   of mentioning anything unless I do it in a supplement?

13         THE COURT:   Well, call it an amended complaint.

14   Put in whatever you want to put in, and if there is some

15   problem with it, I'm sure we'll get a Motion to Dismiss

16   the Amended Complaint, but you ought to put in whatever

17   claims you want.

18         MS. MACPHERSON:   Can I label it Amended and

19   Supplemental?

20         THE COURT:   If you want to, sure.  Amended is

21   fine, amended is -- that's all you need to say, but if you

22   want to say amended and supplemental, that's fine too.

23         MS. MACPHERSON:   Because the other problem is

24   the original complaint alleges certain actions and does

25   not allege the actions that took place after August 16

1    because I couldn't have known they were going to take

2    place when we walked into court at ten o'clock --

3          THE COURT:   That's fine.  You can just call it

4    amended complaint and there is no, there is no magic to

5    the name that you put on that document.  The point is you

6    should promptly file what it is you want to file.

7          MS. MACPHERSON:   But there was the problem with

8    the 26, I wrote my 26(f) according to the, up to the

9    morning of August 16.

10         THE COURT:   Okay, all right, doesn't matter.

11         MS. MACPHERSON:   Should I throw in the rest of

12   the allegations up to after August 16 that's part of the

13   supplemental where I got confused on the 26(f) --

14         THE COURT:   Just put in whatever complaints you

15   have about Sally Hodgedon.

16         MS. MACPHERSON:   Okay.

17         THE COURT:   And call it an Amended Complaint and

18   file it.

19         MS. MACPHERSON:   And my 26(f) --

20         THE COURT:   Don't worry about the 26(f), we can

21   do it that separately.  The 26(f) will be taken care of

22   today.

23         MS. MACPHERSON:   All right.

24         THE COURT:   So are you clear, though, what you

25   need to file?

MS. MACPHERSON:  A new Request to Amend?

THE COURT:  No, you don't need to do a request.

MS. MACPHERSON:  Because he didn't answer.

THE COURT:  You have the right to file.  Just file, put together whatever your complaints are against Sally Hodgedon, not against her law firm, put them in a document called an Amended Complaint, file it, send him a copy.

MS. MACPHERSON:  Okay.

THE COURT:  Okay?

MR. SHEEHY:  Can you emphasize, Your Honor, that I get a copy of any pleadings that are filed with the court?

THE COURT:  Sure.

MS. MACPHERSON:  Of course.

MR. SHEEHY:  Well, we have a list here of instances where I haven't received any of these pleadings.

MS. MACPHERSON:  That's --

THE COURT:  Whatever.  Everybody, as of today everybody knows anything that comes to me or to the court has to go to your opponent so -- that should be done and that's what the certification page is for.

MS. MACPHERSON:  Of course.

THE COURT:  For certifying that that's what's happened, and typically if you haven't properly filled