## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HADLEY MACPHERSON (EGAN), RACHEL EGAN, and LOYAL EGAN,     Plaintiffs,<br><br>v.<br><br>SALLY HODGEDON, ET AL.,     Defendants. | CIVIL ACTION NO. 3:01cv1555 (SRU) |

## RULING ON MOTIONS TO DISMISS

This case is, in essence, a legal malpractice action. Plaintiffs filed their original complaint in August 2001.[1] Since then, plaintiffs have filed or attempted to file various amended complaints. At oral argument on January 18, 2006, I granted defendants' motions to dismiss the operative complaint and ordered plaintiffs to file a new amended complaint, not to exceed 25 pages, no later than February 10, 2006. As of May 16, 2006, plaintiffs have not filed an amended complaint. Defendants have each filed a motion requesting that I enter a judgment of dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motions to dismiss are granted.

### I.     Procedural History

This matter has a long and difficult procedural history.

---

[1] There is another case pending before me with the same plaintiffs and similar procedural issues. I have addressed that case, *Macpherson, et al. v. Berman, et al.*, 3:02cv1309 (SRU), in a separate opinion.

A.    August 16, 2001 to May 14, 2004 ("Phase 1")

On August 16, 2001, Hadley Macpherson and her two minor children, Rachel and Loyal Egan, filed a pro se complaint, alleging legal malpractice, breach of contract, negligence, misrepresentation, and coercion against Sally Hodgedon, the lawyer who had represented the plaintiffs in divorce and custody proceedings involving Paul Egan, Macpherson's former husband.  Plaintiffs requested, and I granted two extensions of time to serve Hodgedon; plaintiffs served her in April 2002.

On January 29, 2003, plaintiffs filed a motion to amend their complaint, which I denied, because I informed plaintiffs that they could file an amended complaint as of right, that is, without seeking leave of the court.  *See* April 10, 2003 Endorsement.  I permitted plaintiffs until May 7, 2003 to file their amended complaint, but plaintiffs did not meet that deadline.

On January 30, 2003, Hodgedon filed a motion to consolidate this case with *Macpherson, et al. v. Berman, et al.*, 3:02cv1309 (SRU).  Plaintiffs objected to consolidating the cases.[2]  On April 10, 2003, I denied Hogedon's motion to consolidate.

During phase 1, Hodgedon filed five motions to dismiss the case, primarily due to plaintiffs' repeated failures to meet court-ordered scheduling and discovery deadlines.  I denied all of those motions, even though plaintiffs had in fact failed to meet many deadlines.  Additionally, in phase 1 alone, plaintiffs filed at least 11 motions for extensions of time.  I granted each of plaintiffs' motions for extension of time, giving due consideration to their pro se

_____

[2] Plaintiffs have subsequently filed three motions to consolidate.  I have denied all motions for consolidation, whether made by plaintiffs or defendants.

status, in order to give them fair opportunity to respond to motions and fulfill their discovery

obligations.[3]  After more than 2 ½  years of litigation, the parties had not submitted a Rule 26(f)

report, and almost no discovery had been conducted.  I had arranged for experienced legal

counsel to represent plaintiffs pro bono, but plaintiffs declined the offer.

     B.     <u>May 14, 2004 to January 18, 2006 ("Phase 2")</u>

On May 14, 2004, plaintiffs filed a document titled "First Amended Complaint" against

Hodgedon, Communities' Law Center, Daughters of the Holy Spirit, Sisters of Notre Dame,

Sisters of St. Joseph, and Sisters of Mercy.  The first amended complaint was filed more than one

year after the deadline I had set.  Although the first amended complaint named additional

defendants in the caption, it did not delineate any substantive allegations against those

defendants.  In June 2004, Hodgedon filed a motion to strike the Communities' Law Center from

the first amended complaint.  In addition, plaintiffs filed a motion for stay of process and stay of

defendants' response to plaintiffs' amended complaint, which I granted on June 14, 2004,

reminding plaintiffs that "further extensions of time to file an amended complaint are unlikely to

be granted."  Between July and September 2004, plaintiffs were unable to proceed with the case

for medical reasons.  On November 3, 2004, I granted Hodgedon's motion to strike.

On March 10, 2005, plaintiffs filed a motion seeking additional time to file an amended

complaint.  On March 11, 2005, over Hodgedon's objection, I granted plaintiffs' motion for

extension of time, reminding them that "the difficulties they have experienced in filing pleadings

---

[3] During phase 1, I granted every motion for extension of time requested by plaintiffs.
Hodgedon did not request any motions for extension of time during phase 1.

could largely be avoided by obtaining counsel to represent them." (doc. # 85)  On March 15,

2005, plaintiffs filed their second amended complaint (doc. # 88) against Daughters of the Holy

Spirit, Sisters of Notre Dame, Sisters of Mercy, Sisters of St. Joseph, Communities' Law Center,

and Sally Hodgedon.

      On June 24, 2004, despite the fact that they had previously objected to consolidation,

plaintiffs filed a motion to consolidate this case with *Macpherson, et al. v. Berman, et al.*,

3:02cv1309 (SRU) (doc. # 72).  On March 16, 2005, plaintiffs filed another motion to

consolidate this case with *Macpherson, et al. v. Berman, et al.*  (doc. # 87).

      C.     <u>January 18, 2006 to Present ("Phase 3")</u>

      On January 18, 2006, I held oral arguments on all pending motions, including defendants'

motion to strike the second amended complaint and various motions by plaintiffs for more

extensions of time to respond to pending motions.  Before ruling, I once again advised plaintiffs

to retain counsel and indicated that the court would still provide pro bono counsel for her.

January 18, 2006 Hearing Transcript (doc. # 135) ("Jan. 18, 2006 Transcript") at 47-50.

Macpherson indicated that she did not wish the court to provide her with counsel because there

"is a benefit I have by standing pro se for myself."  Jan. 18, 2006 Transcript at 48.

      I granted defendants' motions to dismiss the second amended complaint (doc. # 88).  The

second amended complaint was an unworkable 270-page document, containing 1545 paragraphs.

I also denied plaintiffs' second motion for consolidation.  Although I had not granted plaintiffs'

motion for consolidation, plaintiffs unilaterally treated the second amended complaint as a

consolidated complaint aimed at both pending actions.  That complaint violated the "short, plain

statement" requirement of Rule 8 of the Federal Rules of Civil Procedure. Defendants argued that, although plaintiffs are pro se litigants, their frequent motions for extension of time, failure to comply with court-ordered deadlines, and failure to submit a workable complaint in over four years of litigation, was effectively violating their rights to due process. Jan. 18, 2006 Transcript at 50-55.

Despite the fact that the case had been pending for almost five years without a workable complaint, I granted plaintiffs leave to file a new amended complaint to be filed no later than February 10, 2006. I advised plaintiffs that this would be the "very, very, very last time" that they would be permitted to file an amended complaint. Jan. 18, 2006 Transcript at 67. I emphasized that "I do not intend to grant any extensions of time," and urged plaintiffs to file early if they anticipated any difficulties meeting the deadline. Jan. 18, 2006 Transcript at 69. I answered Macpherson's questions and ensured that she was not confused about my ruling. Jan. 18, 2006 Transcript at 69-73.

Plaintiffs did not file an amended complaint on February 10, 2006. On February 13, 2006, plaintiffs filed their third motion for consolidation (doc. # 136). On February 14, 2006, plaintiffs submitted a letter requesting permission to file an amended complaint late, as if it were timely (doc. # 138). Plaintiffs did not attach a copy of the amended complaint to that letter. Plaintiffs cited bad weather and mistrust of the postal system as reasons why the complaint had not been filed.

All of the defendants have filed motions to dismiss this case under Rule 41(b) of the Federal Rules of Civil Procedure. Since February 14, 2006, plaintiffs have filed 10 motions,

letters, and notices, seeking extensions of time, permission to file excess pages, and giving notice

of their intent to file timely responses to defendants' motions to dismiss.  Over the objections of

defendants, I granted plaintiffs' motions to extend deadlines.  Plaintiffs have also filed responses

to defendants' motions to dismiss and defendants' objections to filing the amended complaint

late, but as timely.  Since February 13, 2006, plaintiffs' filings have totaled over 500 pages.

Plaintiffs have not, however, submitted a new amended complaint.

On May 2, 2006, I held oral argument on all pending motions.

## II.    Discussion

Over the past 4 ½ years, I have made every effort to reach the merits of the pro se

plaintiffs' case and have given them substantial leniency in complying with court-ordered

deadlines.  In determining whether dismissal is appropriate in this case, I have weighed each of

the five factors delineated by the Second Circuit.  Every factor weighs in favor of dismissal.

After thoroughly considering each factor and having explained my concerns to the plaintiffs on

multiple occasions, I conclude that dismissal is appropriate.

### A.    Legal Standard

Rule 41(b) of the Federal Rules of Civil Procedure provides, "For failure of the plaintiff

to prosecute or to comply with these rules or any order of court, a defendant may move for

dismissal of an action or of any claim against the defendant."  A district court has discretion to

determine if a matter should be dismissed pursuant to Rule 41(b) for failure to comply with a

court order.  *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir.

1988) (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962); *Harding v. Federal*

*Reserve Bank of New York*, 707 F.2d 46, 50 (2d Cir.1983)).  Dismissal with prejudice is "a harsh

remedy to be utilized only in extreme situations."  *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d

853, 855 (2d Cir. 1972).  Courts should be hesitant to dismiss a case for procedural deficiencies

when the plaintiff is a pro se litigant.  *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).

Nevertheless, "the power to invoke this sanction is necessary in order to prevent undue delays in

the disposition of pending cases and to avoid congestion in the calendars of the District Courts."

*Link*, 370 U.S. at 629-30.

        The Second Circuit has delineated a five-factor test to determine whether dismissal is

appropriate under Rule 41(b).  Considering the record as a whole, the court should consider: (1)

the duration of the plaintiff's failures; (2) whether the plaintiff received notice that further delays

would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay;

(4) whether the judge has taken care to strike a balance between alleviating court calendar

congestion and protecting a party's right to due process and a fair chance to be heard; and (5)

whether the judge has adequately assessed the efficacy of lesser sanctions.  *Valentin v. Dinkins*,

121 F.3d 72, 76 (2d Cir. 1997); *Alvarez*, 839 F.2d at 932 (citing *Harding*, 707 F.2d at 50).

        B.        Application of Five-Factor Involuntary Dismissal Test

        Applying those five factors to the facts of this case, I conclude that dismissal is

appropriate.

                1.        *Duration of Plaintiffs' Failures*

         There are two components to this factor:  (1) whether the failures are attributable to the

plaintiff, and (2) whether the failures were of significant duration.  *See Spencer v. Doe*, 139 F.3d

107, 113 (2d Cir. 1998).  Here, the failures are attributable to plaintiffs and have been significant.

This case is more than 4 ½ years old, yet there is no operative complaint and there has been little or no discovery conducted.  *See* April 24, 2003 Endorsement (indicating that no 26(f) report will be filed).  The delay has been caused primarily by plaintiffs' repeated motions for extensions of time and failure to comply with court-ordered deadlines.  Plaintiffs have filed approximately 28 motions for extension of time and/or letters describing why the progress of the case should be delayed.  *See, e.g.*, Docket Numbers 3, 4, 14, 34, 36, 39, 43, 44, 45, 47, 51, 55, 57, 62, 63, 69, 73, 74, 76, 84, 96, 105, 120, 138, 151, 152, 161, 169.  Based on a review of the docket sheet, it is difficult to quantify the duration of those delays.

Considering only the issue of filing an amended complaint, however, plaintiffs have received three years of additional time.  Plaintiffs filed the original complaint in August 2001.  Since approximately January 2003, plaintiffs have attempted to file an amended complaint.  *See* Docket Number 28.  I instructed plaintiffs that they had until May 2003 to file an amended complaint as of right.  *See* April 10, 2003 Endorsement.  Plaintiffs did not file an amended complaint by May 2003, and instead, I granted their motion to amend their complaint by March 15, 2005.  *See* Docket Number 85.  The March 15, 2005 complaint did not comply with the Federal Rules of Civil Procedure,[4] and I granted plaintiffs another extension of time to February 10, 2006 to file a new amended complaint.  Jan. 18, 2006 Transcript at 67-68.  Plaintiffs did not

---

[4] The March 15, 2005 complaint was 270 pages long and contained 1545 paragraphs. Additionally, plaintiffs treated it as a consolidated complaint to apply in both cases, but I had not consolidated the cases, and plaintiffs did not request or receive permission to consolidate the complaints.

file a new amended complaint by February 10, 2006. A workable amended complaint is now at least three years late.

At the May 2, 2006 oral argument, Macpherson suggested that defendants contributed to the length of the delay in this case. A review of the docket sheet indicates otherwise. This is not a situation in which the defendants have attempted to delay the case in order to wear down the plaintiffs; rather, the defendants in this case have objected to extensions of time and have attempted to bring this case to a close. For example, plaintiffs served Hodgedon on April 24, 2002, and just two weeks later, on May 7, 2002, Hodgedon filed a motion to dismiss (doc. # 7). Hodgedon filed four additional motions to dismiss during phase 1 of the case – on August 6, 2002 (doc. #17), December 3, 2002 (doc. #26), October 3, 2003 (doc. # 53), and January 15, 2004 (doc. # 61). Defendants have filed very few motions for extension of time. During phase 1, Hodgedon did not file any motions for extension of time, and appeared to respond to all pending issues in a timely manner.

Macpherson also argued that defendants asked for extensions of time to respond to the second amended complaint (doc. #88), which was filed on March 15, 2005. Hodgedon responded to the second amended complaint by filing a motion to strike on April 4, 2005 (doc. #89). The other defendants were served for the first time in April 2005, and although they requested an extension of time, each defendant responded to the second amended complaint by filing a motion to dismiss in May 2005. *See* Docket Numbers 115 and 116. Additionally, a slight delay in responding to the second amended complaint was reasonable, given the fact that the second amended complaint was 270 pages and 1545 paragraphs long.

Because the plaintiffs are primarily responsible for the delay, and the delay has spanned several years, this factor weighs in favor of dismissal.

> 2.  *Whether Plaintiffs Received Notice That Further Delay Would Result in Dismissal*

I have given plaintiffs extensive notice that I would not grant further extensions of time, and further delays would result in dismissal.  On April 13, 2004, I held a telephone status conference (doc. #65) during which I told Macpherson that the final deadline for filing an amended complaint would be May 14, 2004.  *See* April 13, 2004 Telephone Status Conference Transcript (doc. # 66) at 13.  I told Macpherson that May 14, 2004 would be the absolute deadline, and Macpherson responded, "Do or die, got it."  *Id.* at 12.  I emphasized that "we need to get this case, which is a very old case now, on track."  *Id.* at 13.  I told Macpherson that "I want to give you one last chance, but I'm to the point where I think out of fairness to the defendant we need to make this literally a last chance."  *Id.* at 2.  Although plaintiffs filed a document on May 14, 2004 titled "First Amended Complaint" (doc. # 67), it was not a complete complaint and did not comply with the Federal Rules of Civil Procedure.

As a result, plaintiffs once again requested an extension of time to file a completed amended complaint.  On June 14, 2004, I granted that motion, but I informed plaintiffs, "Further extensions of time to file an Amended Complaint are unlikely to be granted."  *See* Docket Number 71.  On September 30, 2004, I explained that "the pendency of objections to other motions does not preclude plaintiffs from filing a motion for leave to amend complaint."  *See* Docket Number 78.

On January 18, 2006, I told plaintiffs that "this is going to be the last complaint."  *See*

Jan. 18, 2006 Transcript at 68.  I indicated that I did not intend to grant additional extensions of

time to file an amended complaint.  *See id.* at 69.  I ordered:

> The plaintiff will be permitted to re-file – and this is the very, very, very last
> time this will happen, we are way past the point of reason here – one
> complaint in each of these actions, a maximum of 25 pages [setting] forth a
> short and plain statement of the claims against each of the defendants who
> have already been served in those cases.

*Id.* at 67-68.  I explained, "It has to be filed, meaning it has to be in court on the 10th and you

have to serve it, i.e. mail it the day you file it."  *Id.* at 70.

At the May 2, 2006 hearing, Macpherson argued that neither she nor I could have

anticipated the weather and courier-related problems she experienced.  In fact, I had anticipated

possible delays when I warned Macpherson at the January 18, 2006 hearing that "these

complaints have to be filed by February 10, 2006.  I do not intend to grant any extensions of

time.  If you expect to have any problem, get them in early."  *Id.* at 69.  Furthermore, the weather

and courier-related problems are largely irrelevant; the point is not that plaintiffs filed a new

amended complaint late, but that they did not file it at all.

The record as a whole is replete with examples where I gave plaintiffs additional

opportunities to comply with my orders.  I have given plaintiffs many notices that failure to

comply with court orders would result in dismissal, and plaintiffs have still not complied with my

orders.  Therefore, this factor weighs in favor of dismissal.

3.    *Whether Defendants Are Likely to be Prejudiced by Further Delay*

Additionally, the defendants are likely to be prejudiced by further delay.  Defendants have

defended this action for years.  They have incurred costs, and will continue to incur costs

-11-

associated with that defense.  *See* Jan. 18, 2006 Transcript at 55.  After almost five years, there is

not even a viable complaint against the defendants.  Defendants will continue to be prejudiced if

this case were to go to trial.  Witnesses' memories have surely faded, and potential exhibits will

be more difficult to find.  Those concerns are amplified in this case, because the parties have not

conducted discovery, due to plaintiffs' requests for extensions of time.

At the January 18, 2006 hearing, defense counsel argued that I should consider the

defendants' due process rights in this case:

> Now, I understand that the district court relaxes rules of procedure vis-a-vis
> pro se defendants or plaintiffs, but there comes a point in time when the court
> has to be concerned with our procedural due process rights, because the rules
> that the court set up are intended to establish what the limits of due process
> are for both sides of the case.  And so if someone comes to court and claims
> they are not getting due process, you look to the rules and say, well, here are
> the rules, follow them.  In this case the rules are not being followed.

Jan. 18, 2006 Transcript at 52.  Defense counsel continued:

> And we respectfully suggest that you've got to start saying are the due
> process rights of the defendants being violated here . . . And so to the extent
> that we have some rights here, it's you who ha[s] to say to the parties I've got
> to look out for your rights as well as the plaintiff's rights.

*Id.* at 53.  I indicated that I was sensitive to the fact that defendants also have due process rights

and that fairness demands that the plaintiffs very quickly file a workable complaint that complies

with the Federal Rules of Civil Procedure.  *Id.* at 55, 69.  Although plaintiffs were aware of my

concern for the defendants' due process rights, they did not file the amended complaint.

Even if plaintiffs experienced difficulties getting their new amended complaint to court

on February 10, 2006 due to problems with the weather and their courier, if they had filed the

complaint late on February 10th or the next weekday, the defendants would have at least been on

-12-

notice of the claims against them.  Even though the defendants would have likely filed motions to dismiss the complaint for being late, it would have been difficult for them to argue that they had been prejudiced by one day's delay.  Now, it is over three months later and plaintiffs have still not filed a complaint.  Three months in and of itself might not be prejudicial, but in this case, I must add that three months' delay to the three years of extensions that plaintiffs have already received.

Although each delay taken in isolation might not have prejudiced defendants, considered cumulatively, the defendants have been and will likely continue to be prejudiced.  Therefore, this factor weighs in favor of dismissal.

4.    *Whether the Judge Has Attempted to Strike a Balance Between the Plaintiffs' Due Process Rights and Alleviating Court Calendar Congestion*

I have attempted to give plaintiffs a fair chance to be heard and to protect their due process rights with little or no concern for court congestion.  The Second Circuit has held, "There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court."  *Lucas v. Miles*, 84 F.3d 532, 535-36 (2d Cir. 1996).  Court congestion includes tedious, vexatious, or burdensome litigation.  *See id.*  The record demonstrates that this case has had an extreme effect on court congestion.  I have repeatedly overlooked that congestion, however, in my attempt to protect the plaintiffs' due process rights and have long struck the balance in plaintiffs' favor.  Despite my attempts to protect the plaintiffs' due process rights, we are almost five years into the litigation and do not have an operative complaint.  The extreme effect on court congestion weighs in favor of dismissal.

-13-

a.    Pro Bono Counsel

I obtained extremely competent pro bono counsel for plaintiffs during phase 1 of this case

and urged them to accept that counsel on numerous occasions. *See, e.g.*, Jan. 18, 2006 Transcript

at 47-50. At the January 18, 2006 hearing, I told Macpherson:

> [L]et me just really urge you to speak with [the counsel I obtained for you]
> again and consider retaining her to represent all three plaintiffs, because she's
> a very fine lawyer. She's a former judge and she's very experienced . . . so if
> you have a valid claim here, you ought to be represented by counsel and it's
> going to make this case go faster and smoother and you're going to have a
> better chance of success . . . and I really, really strongly would counsel you to
> have her represent you.

*Id.* at 48-49. Macpherson responded that she had spoken to the lawyer I obtained for her and that

the lawyer had been willing to represent Macpherson. *Id.* at 48. Nevertheless, Macpherson told

me that she did not want that lawyer to represent her, because "I have a benefit because of certain

things that I know and I would like not to lose that benefit and in a way against my ignorance or

ineptness in this room, there is a benefit I have by standing pro se for myself." *Id.* at 48.

The record shows that I have reminded plaintiffs that obtaining counsel would prevent

some of the difficulties they have had in filing documents with the court. *See, e.g.*, Docket

Number 85. I urged plaintiffs to obtain counsel, because "a lawyer would have no problem

complying with the [January 18, 2006] order and getting a complaint filed that meets this order.

And whether or not you get a lawyer, you need to follow the rules." *See* Jan. 18, 2006 Transcript

at 73.

b.    Extensions of Time

I have granted approximately 19 motions for extension of time filed by plaintiffs,

-14-

including several very substantial motions for extension of time with respect to filing amended complaints. I have been so lenient with regard to discovery deadlines that virtually no discovery has been conducted.

Despite the age of these cases, I gave the plaintiffs yet another chance to file an amended complaint, which they did not do. Instead, the plaintiffs have filed hundreds of pages of motions and exhibits in support of their renewed motion to consolidate and in opposition to defendants' motions to dismiss.

           c.      Attempt to Relax Procedural Requirements and Address Merits

I have relaxed procedural requirements for the plaintiffs in an attempt to reach the merits of plaintiffs' claims. I have been hesitant to dismiss this case on procedural grounds. If the plaintiffs had filed the amended complaint due February 10, 2006, even if they filed it late or as an exhibit to the hundreds of pages of subsequent briefing they submitted, I could have considered the substance of that complaint. They did not do so.

Indeed, at the May 2, 2006 hearing, Macpherson indicated that even though she completed the new amended complaint, she did not submit it, because then I would have been able to see it and it would have become the basis of my decision. Macpherson argued that if she tried to file the amended complaint, I would have considered the substance and merits of that complaint, and that would not be fair, because the merits of the complaint are not at issue here. In fact, the exact opposite is true. For the last five years, I have been trying to get to the merits of plaintiffs' claims.

The record as a whole demonstrates that I have taken care to preserve plaintiffs' due

process rights, and to make sure that plaintiffs have had an opportunity to be heard. Plaintiffs have been unresponsive to those efforts, and the resulting effect on court congestion has been extreme. Therefore, this factor weighs in favor of dismissal.

> 5.      *Efficacy of Alternative Sanctions*

The age of the case and the extensive opportunities for plaintiffs to comply with court orders demonstrates that there is no lesser sanction that would effectively resolve plaintiffs' failures to meet court-ordered deadlines. A monetary sanction would be an unfair drain on the pro se plaintiffs' resources and would not address the prejudice to the defendants. There are no discovery-related sanctions that would be effective, because the parties have not conducted discovery. An adjournment coupled with a warning of dismissal would not be effective here, because I have already warned the plaintiffs on at least four separate occasions that the case would be dismissed if they failed to comply with court orders and deadlines. *See Scott v. Perkins*, 2005 WL 2327277, 4 (2d Cir. 2005) (suggesting that the court consider the efficacy of an adjournment coupled with a warning of dismissal). Because there is not even a workable complaint in this case, there is really no other possible sanction that would resolve the issue of the plaintiffs' repeated failure to follow court orders and meet deadlines. Thus, this factor weighs in favor of dismissal.

## III.    Conclusion

I am aware that involuntary dismissal is an extreme remedy for a plaintiff's failure to comply with court orders and deadlines. In this particular case, however, it is "necessary in order to prevent undue delays in the disposition of [the] pending case . . . ." *See Link*, 370 U.S. at

-16-

629-30.  I have given priority to the plaintiffs' rights to be heard over the past 4 ½ years and have

overlooked the congestion and delay that has resulted.  After reviewing the record as a whole, it

is clear that the plaintiffs are simply not responding to my instructions.  *Compare* Docket

Number 66 (April 13, 2004 Telephone Conference Transcript ), *with* Docket Number 135 (Jan.

18, 2006 Transcript).  Plaintiffs have refused my offers to provide them with competent pro bono

counsel.  Despite over 19 extensions of time over almost five years, the plaintiffs have not

submitted an appropriate complaint.  We keep repeating the same cycle of non-compliance with

court orders and deadlines, and we have reached the point where it is simply not fair to the

defendants or consistent with the ability of the court to administer justice to continue that cycle.

After applying the five-factor test delineated by the Second Circuit, and finding that all five

factors weigh in favor of dismissal, I have concluded that involuntary dismissal is necessary.

Defendants' motions to dismiss **(docs. # 137, 139, 140)** are **GRANTED**.  This case is

dismissed with prejudice.  Plaintiffs' motion for consolidation (**doc. #136**) is **DENIED**.  The

clerk shall close the case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 16th day of May 2006.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

-17-